## No. 28,469.

J. E. PUTNAM, *Appellee,* v. THE HEDVILLE STATE BANK, Garnishee, *Appellant,* et al.

(274 Pac. 231.)

Opinion filed February 9, 1929.

*David Ritchie,* of Salina, for the appellant.

*C. W. Burch, B. I. Litowich* and *La Rue Royce,* all of Salina, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This appeal involves the right of a bank, as garnishee, to offset a note owed to the bank by the principal debtor against his deposit in the bank, in view of the circumstances here-

inafter stated. The trial court held against the bank and it has appealed.

The facts giving rise to the controversy, so far as here pertinent, are as follows: Plaintiff, residing and being engaged in business at Salina, owned cattle which were being pastured for him by one Al Chapman, who was operating a farm and ranch. In some way plaintiff learned that on the night of August 17, 1921, Chapman and three other persons—J. D. Jones, George Talley and E. L. Jones—aiding and assisting him, took four carloads of plaintiff's cattle out of the pasture, drove them to a shipping point and shipped them to Kansas City, where they were sold. On tracing the matter he found that George Talley claimed to have purchased the cattle from Al Chapman for $3,800, paying for them by check, which Chapman had deposited to his credit at the Hedville State Bank. Plaintiff went to the bank and inquired concerning the matter, found the deposit had been there made, and that charges had been made against the deposit by checks drawn thereon and certified checks issued by the bank and then outstanding. He also learned that on August 13, 1921, Al Chapman had opened an account at the Hedville State Bank by borrowing $700, for which he gave his note secured by a chattel mortgage on growing corn, kafir corn and cane, and the representatives of the bank thought the security sufficient. The plaintiff made further investigation and promptly brought an action naming Al Chapman, J. D. Jones, George Talley and E. L. Jones as defendants, in which it was alleged that plaintiff was the owner of the cattle in question and the defendants had converted them to their use to the damage of plaintiff in the sum of $6,470, and caused a garnishment summons to issue to the Hedville State Bank, also to two banks at Salina. To this garnishment summons the Hedville State Bank answered that on the date of the garnishment there was a credit on the books of the bank in favor of Al Chapman in the sum of $1,866; that it had issued to the defendant E. L. Jones its cashier's check for $1,148, and to J. D. Jones its cashier's check for $400, and had transferred an equal amount of the funds from the Chapman account to its cashier's account to take care of the cashier's checks; that Chapman was indebted to the bank in the sum of $700, with interest thereon at 8 per cent from August 13, 1921, leaving a balance in the two accounts of $2,712.45; that it had no other property or money or effects of defendants in its possession or under its

control; that it was informed that the plaintiff, and J. D. Jones, E. L. Jones and George Talley, claimed some right to the money; that upon the surrender of the cashier's checks it was ready, willing and able to pay to the court the sum of $2,712.45.

In November, 1923, the case came on for trial between the plaintiff and the principal defendants, resulting in a judgment for the plaintiff. Among other things the court found that at the time of the service of the garnishment summons the Hedville State Bank had funds of the defendant, Al Chapman, in the sum of $3,412.45; that the garnishee claimed the right to $700 thereof; that the motion filed by plaintiff for judgment upon the answer of the garnishee was, by agreement of the parties, considered as a demurrer to the answer, and sustained, and the Hedville State Bank was allowed twenty days in which to make answer setting forth its claim to $700 of the deposit. The judgment of the court disposed of the case as to other garnishees, and as to the money standing to the credit of Chapman in the Hedville State Bank other than the $700, and concerning those matters no question is now raised.

On November 30, 1923, the Hedville State Bank filed an amended answer, as garnishee, which repeated the allegations of its former answer; that at the time of the garnishment there was a credit on its books in favor of Chapman of $1,866; that there were then two cashier's checks outstanding aggregating $1,548. It further averred that Chapman was then indebted to the bank in the sum of $700, with interest at 8 per cent from August 13, 1921, which indebtedness was evidenced by a note due in 120 days from date, a copy of which note was attached; and it was further averred that the indebtedness still exists, and that no part of the same has been paid; that at the time of the issuance of the service of the garnishment summons Chapman was, and ever since has been, wholly insolvent, and unless the bank is permitted to offset the money on deposit to the credit of Chapman it will lose that debt. For further answer the garnishee averred that the action in which the garnishment summons was issued was an action sounding in tort, and that the clerk of the court was without authority in law to issue such summons, and that the issuance and service thereof was void, for which reason the court had no jurisdiction to make any orders concerning the money in the hands of the garnishee. As to this point the trial court held that the action was founded on the implied

contract to pay for the cattle, and no serious complaint is now made of that ruling.

The plaintiff took issue on this amended answer of the garnishee in which it was averred that at the time of the service of the garnishment summons the money on deposit in the bank to the credit of Chapman arose from the misappropriation of plaintiff's property. At that time the indebtedness on the $700 note to the bank had not matured; that the bank had not made any application of funds to such indebtedness, and had not done so at the time of the filing of its amended answer. At the time the bank loaned money to Chapman, evidenced by the $700 note, it took good and sufficient security for the payment of the indebtedness, had such security at the time it was served with the garnishment, and at the time it filed its amended answer as garnishee; that if the bank had not recovered its indebtedness from Chapman it was because it neglected to appropriate such security; that the bank did not make the loan to Chapman on the financial standing or solvency of Chapman, but on the fact of the security it then took. In reply to this notice to take issue the bank filed a general denial. On these issues the case was tried in January, 1928.

By bringing the action in the form it was brought plaintiff, so far as the civil liability of Chapman and his confederates was concerned, elected to ratify the conversion and to treat the matter as a debt from Chapman to plaintiff in so far as it related to the proceeds of the cattle deposited by Chapman in the bank. Appellant argues that because Chapman was at the time of the trial shown to be insolvent, the bank had the right to set off the debt of Chapman to the bank even though his note to the bank was not then due against his deposit there. (*Docking v. Commercial National Bank*, 118 Kan. 566, 235 Pac. 1044. See, also, 7 C. J. 655, and *Meinhart v. Farmers State Bank*, 124 Kan. 333, 259 Pac. 698.) This argument lacks merit for the reason that it is clear when the bank made the loan of $700 to Chapman on August 13 it did so, not on the theory that Chapman was then insolvent, but for the reason that it regarded its security then taken to be good. Neither did the bank make this loan to Chapman on the theory or hope that he would later steal plaintiff's cattle to get the money to pay the bank. The bank did not, in fact, set off the sum due it from Chapman against his deposit, and had not done so even to the time its amended

answer as garnishee was filed, more than two years later. The bank, in fact, continued to take renewal notes from Chapman, and it did so in evidence of his debt to the bank and because the bank did not want past-due paper, and because Chapman had thought or advised the bank officials that he would be able to take care of it. If the bank had made this set-off prior to taking these renewal notes there would, of course, have been no indebtedness for which to take a note. More than that, plaintiff, at the time he filed that action, had other remedies open to him than to sue Chapman for the money, in a sense ratifying the sale of his cattle and treating the matter simply as a debt. He might have taken steps to follow the cattle themselves in the hands of the purchasers, or the proceeds wherever found. He was induced, in part at least, not to take that step because the officers of the bank, when he discussed the matter with them on August 21, advised him that the bank had made the loan to Chapman on August 13 on the security then given, and that the bank considered itself secured. It may very well be true, as argued by appellant, that the subsequent renewal notes were not taken in payment of the original debt, but the fact they were taken at all can be justified only on the theory that the original debt existed at the time the several renewal notes were taken.

That is about all there is in this case. There is no error in the judgment of the court below, and it is affirmed.

BURCH, J., not sitting.