(700 P.2d 582)

No. 56,535

HERBERT R. KARNER and RUTH D. KARNER, *Plaintiffs-Appellants*, v. JIM WILLIS and RONALD F. LLOYD, a/k/a RON LLOYD, *et al.*, *Defendants-Appellees*, v. KANOPOLIS STATE BANK, *Garnishee/Defendant-Appellee*.

Opinion filed May 31, 1985.

*Dennis J. Keenan* and *Phillip Eugene Porter*, of Keenan, Mauch & Keenan, P.A., of Great Bend, for the appellants.

*Ron Svaty*, of Aylward, Svaty & Sherman, of Ellsworth, for the appellees.

Before ABBOTT, P.J., REES and PARKS, JJ.

PARKS, J.: Plaintiffs, Herbert and Ruth Karner, are the judgment creditors of defendants, Willis and Lloyd. Plaintiffs obtained an order of garnishment against defendant Lloyd's bank account with garnishee, Kanopolis State Bank (Bank), in seeking to collect on their judgment. The Bank answered that it had no funds belonging to defendant because it had exercised its right of setoff against his account. The plaintiffs contended that the setoff was wrongful but the district court disagreed. Plaintiffs appeal from the court's decision.

A bank has the right to set off any *mature* claim or obligation which it has against any depositor. This right is recognized by statute (K.S.A. 9-1206) and case law. See *Iola State Bank v. Bolan*, 235 Kan. 175, 187-88, 679 P.2d 720 (1984). If the loan is not mature, the bank cannot set off deposits against it unless the bank can show that the debtor is insolvent. *First Nat'l Bank of Gaylord v. Autrey*, 9 Kan. App. 2d 96, 99, 673 P.2d 448 (1983); *Docking v. Commercial National Bank*, 118 Kan. 566, 568, 235 Pac. 1044 (1925). The date on which a loan matures is determined by the agreement of the parties. Therefore, if the parties have included in their agreement a right of the creditor to accelerate the maturity of the debt under certain circumstances, a properly accelerated loan may be found "mature" and the proper subject of setoff. *Olsen v. Valley Nat. Bank of Aurora*, 91 Ill. App. 2d 365, 234 N.E.2d 547 (1968); 5A Michie, Banks and Banking § 156 (1983).

In this case, the defendant was indebted to the Bank on a note secured by two parcels of real estate. The note did not mature on its face until several months after the garnishment was served. However, it contained a provision permitting the Bank to accelerate the debt if it "deemed itself insecure." Thus, the Bank contended that its exercise of setoff was proper because it had deemed itself insecure and accelerated the maturity of the note prior to setting off the funds in the account. Plaintiffs contend that regardless of the theoretical right of the Bank to declare the note mature, its setoff in this case was wrongful because it did not accelerate the note's maturity in accordance with the law.

K.S.A. 84-1-208 states that a term providing that a party may accelerate payments or performance "when he deems himself insecure" or in words of similar import shall be construed to mean that he shall have the power to do so only if he in good faith believes that the prospect of payment or performance is impaired. The issue of good faith is one of fact. See *Iola State Bank,* 235 Kan. at 186.

The bank officer who accelerated the note testified that defendant was not delinquent on any payments on the loan and that he was unaware at the time whether defendant was insolvent. He stated that his decision to exercise the right of setoff was based on his knowledge of the registration of the foreign judgment for $58,352.40, the inquiry by defendant concerning possi-

ble changes in the way the account was held and the service of the garnishment order on the Bank. The bank official also acknowledged that a few weeks after the Bank deemed itself insecure on the loan to defendant, it loaned him an additional $50,000 which was secured in part by the collateral pledged against the previous loan and in part by new collateral.

In its decision, the trial court stated as follows:

"The Court however believes that the controlling fact is the intent of the bank at the time that the funds were transferred and since the testimony is uncontradicted that at the time this was done by the bank they had deemed themselves insecure and the Court believes that on that basis the intent of the law would be that the bank should prevail."

Since the trial court is presumed to have found all of the facts in issue necessary to support the judgment (*Celco, Inc. of America v. Davis Van Lines, Inc.*, 226 Kan. 366, Syl. ¶ 2, 598 P.2d 188 [1979]), we must conclude that it found that the Bank believed in good faith that the prospect of payment was impaired. When the trial court has made findings of fact and conclusions of law, the scope of appellate review is for this court to determine whether the trial court's findings are supported by substantial competent evidence. *Woods v. Midwest Conveyor Co.*, 236 Kan. 734, Syl. ¶ 2, 697 P.2d 52 (1985). The appellate court will not weigh the evidence or pass upon the credibility of the witnesses. The reviewing court must review the evidence in the light most favorable to the party prevailing below. *Marcotte Realty & Auction, Inc. v. Schumacher*, 229 Kan. 252, 254, 624 P.2d 420 (1981).

Although there was certainly evidence presented in this case to suggest that, viewed objectively, the Bank was not insecure, the test of good faith dictated by K.S.A. 84-1-208 is subjective, requiring only honesty in fact. K.S.A. 84-1-201(19); see *Iola State Bank*, 235 Kan. at 183; K.S.A. 84-1-201, Kansas Comment 1983 (19). In light of this test and our scope of review, we conclude that the finding of a good-faith acceleration of the debt is supported by substantial competent evidence. Therefore, the loan owed by the defendant/depositor was mature at the time the Bank exercised its setoff.

Plaintiffs also contend that even if the debt to the Bank was mature, the Bank could not properly exercise its right of setoff to satisfy a secured loan without first taking action to exhaust the

collateral securing it. In support of this argument, plaintiff cites *Putnam v. Hedville State Bank*, 127 Kan. 534, 274 Pac. 231 (1929). In this pre-Uniform Commercial Code case, the bank had loaned the judgment debtor $700 on a note secured by growing crops which the bank believed at the time to be sufficient security. The debtor deposited the borrowed sum in the bank and the judgment creditor sought to attach the funds through garnishment. The Court held that the bank had no right to exercise setoff against the account because the original loan had been made on the belief that the debtor had security for the note, because the bank had made no attempt to actually apply the funds in the account to the debt and because it had renewed the original note instead of allowing it to mature. The Court did not hold that exhaustion of the collateral on a secured note is a prerequisite to a bank's exercise of setoff. The Court simply concluded that under the circumstances of that case, the bank had failed to demonstrate its right to setoff. Since in this case the note held by the bank was mature as a result of the bank's · exercise of its right of acceleration and since the bank actually set off the account balance against the note, the case at bar is clearly distinguishable from *Putnam*.

In modern commercial practice, the majority of jurisdictions have held that a secured bank need not exhaust the collateral on its loan before it may exercise its right of setoff. See, *e.g., Jensen v. State Bank of Allison*, 518 F.2d 1, 6 (8th Cir. 1975); *Allied Sheet Met. v. Peoples Nat'l Bk*, 10 Wash. App. 530, 518 P.2d 734, *rev. denied* 83 Wash.2d 1013, *cert. denied* 419 U.S. 967 (1974); *Olsen v. Valley Nat. Bank of Aurora*, 91 Ill. App.2d at 371. These decisions point out that the minority view is premised on a rule or statute which permits only one form of action for the recovery of a debt which is secured by collateral. *Jensen*, 518 F.2d at 7, n. 9. By contrast, in Kansas as well as other states which have adopted the U.C.C., creditors are provided with multiple remedies against a debtor in default. K.S.A. 84-9-501. There is no reason for a bank which takes the precaution of requiring collateral to secure its loan to be deprived of a remedy which would be available to an unsecured creditor bank. We conclude that a bank which holds a secured loan simply has the additional option of pursuing the collateral according to the terms of the security

agreement; it need not exhaust the collateral as a prerequisite to the exercise of its setoff right.

In light of this holding and our previous conclusion that the court's finding of good faith was supported by the evidence, we conclude that the district court did not err in holding that the Bank properly set off defendant's bank account against its loan.

Affirmed.

REES, J., concurring: I concur in the result.