UNITED STATES of America,
Plaintiff–Appellee,

v.

BELL CREDIT UNION,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

GOLDEN PLAINS CREDIT UNION,
Defendant–Appellant.

Nos. 86–2059, 86–2060.

United States Court of Appeals,
Tenth Circuit.

Oct. 21, 1988.
Rehearing Denied Nov. 22, 1988.

Eric D. Bruce, Bruce & Davis, Wichita, Kan., for defendants-appellants.

Robert L. Baker, Atty., Tax Div., Dept. of Justice, Washington, D.C. (Roger M. Olsen, Asst. Atty. Gen., Washington, D.C., Michael L. Paup, William S. Estabrook and Douglas G. Coulter, Attys., Tax Div., Dept. of Justice, Washington, D.C., on the brief, Benjamin L. Burgess, Jr., U.S. Atty., Wichita, Kan., of counsel), for plaintiff-appellee.

Durant S. Abernathy, III, General Counsel, U.S. Central Credit Union, Overland Park, Kan. and Gordon D. Payne, Madison, Wis., submitted a brief on behalf of amicus curiae U.S. Central Credit Union.

Robert E. Skar, Casper, Wyo., submitted a brief on behalf of amicus curiae, Wyoming Credit Union League.

Before ANDERSON, BALDOCK and BRORBY, Circuit Judges.

BALDOCK, Circuit Judge.

These cases involve the response of the defendant credit unions to administrative levies by the Internal Revenue Service (IRS) on share accounts owned by taxpayer members. The IRS was seeking to collect unpaid assessments and statutory additions to tax owed by certain taxpayers. The unpaid assessments and statutory additions to tax far exceeded the amounts in the taxpayers' share accounts. Initially, the credit unions did not comply with the levies. Rather, they applied the funds in the accounts to loan balances owed by the taxpayers. The government sued to enforce the levies under I.R.C. § 6332(c)[1] and, on cross motions for summary judgment, the district court held that the government was entitled to the funds in the share accounts. *United States v. Bell Credit Union*, 635 F.Supp. 501, 503–04 (D.Kan.1986). The district court also held that the credit unions were liable for a 50% penalty on the amounts recoverable, I.R.C. § 6332(c)(2), because the refusal to honor the levies was without reasonable cause. *Id.* at 504–05.

On appeal, the credit unions suggest that the district court misunderstood the nature of the state-created property interest in credit union share accounts. They argue that credit unions do not have funds of the taxpayer-members which could be levied against under I.R.C. § 6321 because the share accounts 1) represent capital, not fund deposits, 2) are not assignable to nonmembers of the credit union, 3) are subject to a statutory lien which is superior to a federal tax lien and 4) are subject to a contractual lien which is superior to a federal tax lien. Even if these arguments do not prevail ultimately, the credit unions argue they had reasonable cause for not honoring the levy and should not be liable

---

1. At all times relevant, I.R.C. § 6332 provided in pertinent part:

**SURRENDER OF PROPERTY SUBJECT TO A LEVY.**

(a) **Requirement.**—Except as otherwise provided in subsection (b), any person in possession (or obligated with respect to) property rights or property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process....

(c) **Enforcement of levy.—**

(1) **Extent of personal liability.**—Any person who fails or refuses to surrender any property or right to property, subject to levy, upon demand by the Secretary shall be liable in his own person and estate to the United States in a sum equal to the value of property or rights not so surrendered, but not exceeding the amount of taxes for the collection of

which such levy has been made, together with costs and interest on such sum at an annual rate established under section 6621 from the date of such levy (or, in the case of a levy described in section 6331(d)(3), from the date such person would otherwise have been obligated to pay over such amounts to the taxpayer). Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.

(2) **Penalty for violation.**—In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

All references are to the Internal Revenue Code of 1954, as amended.

for the 50% penalty. We review these legal issues *de novo* and affirm.

## I.

The government may collect any unpaid tax by levy upon all property and rights to property belonging to a taxpayer who neglects or refuses to pay tax within 10 days after notice and demand. I.R.C. § 6331; Treas.Reg. § 301 6331-1(a). A person in possession of property levied upon must surrender it to the government upon demand unless that property is subject to an attachment or execution under judicial process. I.R.C. § 6332(a); Treas.Reg. § 301.6332-1(a). If a person does not surrender leviable property, he will be personally liable for a sum equal to the value of the property together with interest and costs. I.R.C. § 6332(c)(1); Treas.Reg. § 301.6332-1(b)(1). If the failure to surrender the property is without reasonable cause, a 50% penalty shall be imposed. I.R.C. § 6332(c)(2); Treas.Reg. § 301.6332-1(b)(2).

Just as taxpayer deposit accounts in banks are subject to levy by the government under I.R.C. § 6331(a) and Treas.Reg. § 301.6331-1(a), so too are taxpayer share accounts in credit unions. Only two defenses to a levy will excuse noncompliance by a third party thought to hold property of the taxpayer. The third party must establish that it is not in possession of the property or that the property was subject to prior judicial attachment or execution. I.R.C. § 6332(a); Treas.Reg. § 301.6332-1(a); *United States v. National Bank of Commerce*, 472 U.S. 713, 722, 105 S.Ct. 2919, 2925, 86 L.Ed.2d 565 (1985). A panel of this court has determined that we have jurisdiction also to consider other defenses that might be raised by a third party in a civil action under I.R.C. § 7426 for wrongful levy or an administrative proceeding under I.R.C. § 6343 for release of levy or return of property. *United States v. Central Bank*, 843 F.2d 1300, 1305–06 (10th Cir.1988). We doubt, however, that these other defenses would excuse noncompliance with a valid administrative levy because the purpose of an administrative levy

is to protect the government's potential interest in the property pending resolution of any conflicting claims. *See United States v. National Bank of Commerce*, 472 U.S. at 721, 105 S.Ct. at 2924. These other defenses are considered subsequent to the statutory defenses in I.R.C. § 6332(a), and as a basis for the relief from the levy provided by I.R.C. § 7426 or I.R.C. § 6343. *United States v. Central Bank*, 843 F.2d at 1306 n. 5.

The credit unions have established neither statutory defense to the levies. It is undisputed that the accounts were not subject to a prior judicial attachment or execution. And the credit unions were obligated to apply the taxpayers' funds in the share accounts as the taxpayers directed. I.R.C. § 6332(a); Treas.Reg. § 301.6332-1(a). The legal significance of the taxpayers' unrestricted right to withdraw the funds has been ignored by the credit unions with pertinacity.

A federal tax lien arises upon "all property and rights to property, whether real or personal, tangible or intangible," of a taxpayer when the taxpayer is liable for tax and fails to pay after demand. Treas. Reg. § 301.6321-1; *accord* I.R.C. § 6321. The lien is effective from the time of assessment. I.R.C. § 6322. The lien is broad and is intended "to reach every interest in property that a taxpayer might have." *United States v. National Bank of Commerce*, 472 U.S. at 720, 105 S.Ct. at 2924. The federal tax lien may be enforced "by levy upon all property and rights to property" belonging to the taxpayer. I.R.C. § 6331(a); Treas.Reg. § 301.6331-1(a). The share accounts surely are property which may be levied upon.

In concluding this, we look to state law to determine what interest the taxpayer had in the accounts. *Aquilino v. United States*, 363 U.S. 509, 513, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960). Federal law, however, determines the tax consequences of the right created under state law. *United States v. National Bank of Commerce*, 472 U.S. at 722, 105 S.Ct. at 2925. State law provides that a credit union has the power to receive the savings of its mem-

bers in payment for shares and regulate the withdrawal of those shares. Kan.Stat. Ann. § 17–2204(1) & (11) (Supp.1987). Although a credit union has "a lien and right of setoff" on member shares to the extent of any amount owed the credit union, Kan. Stat.Ann. § 17–2212(a) (Supp.1987), the credit unions did not exercise this protection until after the federal tax lien attached. Here, the parties' stipulations indicate that the taxpayers had an unrestricted right to withdraw the funds from their share accounts at the time of the levies. Rec. vol. I, doc. 7 (No. 86–2059); rec. vol. I, doc. 8 (No. 86–2060).

 For purposes of a federal tax levy, the legal consequence of this unrestricted right to withdraw deposits from a share account is unmistakable. The funds in the share account are subject to the levy, even if priority or ownership questions are not yet resolved. *United States v. National Bank of Commerce*, 472 U.S. at 724–25, 105 S.Ct. at 2926–27; *see also United States v. Central Bank*, 843 F.2d at 1305; *United States v. Citizens and Southern Nat'l Bank*, 538 F.2d 1101, 1106–07 (5th Cir.1976), *cert. denied*, 430 U.S. 945, 97 S.Ct. 1579, 1580, 51 L.Ed.2d 792 (1977); *United States v. Sterling Nat'l Bank & Trust Co.*, 494 F.2d 919, 921–23 (2d Cir. 1974). We reject out of hand the credit unions' contention that taxpayer-member shares in a credit union may not be "forcibly transferred" to the government. The government steps into the shoes of the taxpayer and acquires "whatever" rights to the property that the taxpayer had. *United States v. National Bank of Commerce*, 472 U.S. at 713, 105 S.Ct. at 2919. The credit unions' restrictions concerning trans-ferability of shares relate only to incidents of credit union membership.[2] Thus, the credit unions had no valid basis for refusing to honor the federal tax levies.

## II.

Having determined that the federal tax levy should have been honored, we next consider issues which concern priority. Relying on Kan.Stat.Ann. § 17–2212[3] (Supp. 1987), the credit unions suggest that member shares are in the nature of equity capital, for which a setoff would not be permitted. They then argue that a lien attaches to the shares, either by statute or contract, whenever an amount is owed to the credit union and without any further action on the part of the credit union. This lien supposedly has priority over a federal tax lien.

We acknowledge that there are differences between banks and credit unions, but just as a bank has a right of setoff with respect to deposits under Kansas law, *Karner v. Willis*, 238 Kan. 246, 710 P.2d 21, 22 (1985), *aff'g* 10 Kan.App.2d 432, 700 P.2d 582, 583 (1985); *see also* Kan.Stat.Ann. § 84–4–403 (1983); *United States v. Central Bank*, 843 F.2d at 1309 (applying Colorado U.C.C.), so too does a credit union with respect to shares, Kan.Stat.Ann. § 17–2212 (Supp.1987). We look to the Kansas statutory scheme regulating credit unions. *See Kansas Credit Union League v. Redmond*, 216 Kan. 451, 532 P.2d 1039, 1042 (1975). Section 17–2212(a) provides a credit union with "a lien and right of setoff" on member shares and dividends to the extent of amounts owed the credit un-

---

**2.** Kan.Stat.Ann. § 17–2212(b) (Supp.1987) provides:

(b) A credit union may charge a membership fee, as may be established by a board of directors. Fully paid-up shares of a credit union may be transferred to any person upon election to membership, upon such terms as the board may establish....

**3.** **17–2212. Capital and revenue of credit union; right of setoff; dormant accounts; unmatured shares; transfer to reserve fund, when.** (a) The capital of a credit union shall consist of payments that have been made to it by the several members thereof on all types of shares. A credit union shall have a lien and right of setoff on the shares of any member and on the dividends or other earnings payable thereon for and to the extent of any obligation of the member and of any dues and fines payable by the member. A credit union may, upon the resignation or expulsion of a member, cancel the shares of such member, and apply the withdrawal value of such shares toward the liquidation of the member's indebtedness.

ion.[4] Thus, it is ludicrous to argue that the shares of the credit union, be they called capital or deposits, are not subject to a right of setoff. Moreover, in these circumstances, the lien is characterized accurately as "an equitable right of setoff" which allows the credit union to setoff the unmatured indebtedness of an insolvent member against the credit union's liability for the share deposit. *Stann v. Mid American Credit Union,* 39 B.R. 246, 248 (D.Kan. 1984).[5]

Equally meritless is the credit union's argument that its interest, whether it be contractual or statutory, attaches automatically and defeats the federal tax lien. As noted, the federal tax lien attached at the time of assessment. I.R.C. § 6322; *United States v. Central Bank,* 843 F.2d at 1306. The federal rule of priority is first in time first in right, meaning that the first lien to attach and become choate prevails. *United States v. City of New Britain, Connecticut,* 347 U.S. 81, 85–86, 74 S.Ct. 367, 370–371, 98 L.Ed. 520 (1954). Until the credit unions "affirmatively acted" against the taxpayers' accounts, the credit union's rights were contingent or inchoate. *United States v. Central Bank,* 843 F.2d at 1310. The affirmative action necessary required: 1) a decision to exercise a setoff right, 2) an action which accomplishes the setoff and 3) a record corroborating that a setoff right has occurred.

*Id.; Baker v. National City Bank,* 511 F.2d 1016, 1018 (6th Cir.1975). The credit unions did not take these affirmative steps until after notice of the federal tax levies. The cases are legion holding that a federal tax lien prevails when a bank attempts to offset after service of a notice of levy. *See, e.g., United States v. Central Bank,* 843 F.2d at 1310; *Peoples Nat'l Bank v. United States,* 777 F.2d 459, 462 (9th Cir. 1985); *United States v. Euclid Nat'l Bank,* 510 F.2d 461, 463 (6th Cir.1975); *United States v. First Nat'l Bank,* 348 F.Supp. 388, 389 (D.Ariz.1970), *aff'd,* 458 F.2d 513 (9th Cir.1972).

The credit unions cannot claim priority based upon either the statutory lien created by Kan.Stat.Ann. § 17–2212(a) (Supp.1987) or upon contractual language in loan documents requiring the borrower to "pledge" shares or payments on shares as security. I.R.C. § 6323(a) [6] provides that a claim of a purchaser, holder of a security interest, mechanics lienor or judgment lien creditor has priority if that claim arises before notice of the tax lien is filed. *Id.;* Treas.Reg. § 301.6323(a)(1). There is no mention of a statutory lien or right of setoff like that created by Kan.Stat.Ann. § 17–2212(a). In discussing § 17–2212(a), the credit unions claim the protection of I.R.C. § 6323(a) as it relates to a security interest. Reliance on I.R.C. § 6323 here is misplaced for two reasons. First, art. 9 of the U.C.C. as

---

4. A "lien" is "[a] charge or security or encumbrance upon property." Black's Law Dictionary 832 (5th ed. 1979). A "setoff" is "[a] discharge or reduction of one demand by an opposite demand." Ballentine's Law Dictionary 1167 (3rd ed. 1969). A prior version of the statute, Kan.Stat.Ann. 17–2212 (1980), provided that a credit union "shall have a lien on the shares" of a member for amounts owed the credit union by the member. The statute was amended in 1982 to provide that a credit union "shall have a lien and right of setoff on the shares." Kan. Stat.Ann. § 17–2212 (Supp.1987). The credit unions argue that they each sought to enforce a *lien,* not exercise a right of setoff, when they liquidated the taxpayer share accounts. Although we recognize that a lien is different than a setoff, *United States v. Central Bank,* 843 F.2d at 1310, in these circumstances each credit union sought to enforce its lien (in an amount equal to outstanding loan balances) by exercising a right of setoff in the taxpayer share ac-

counts (in an amount equal to the balance of the account).

5. The credit unions take issue with reliance on *Stann v. Mid American Credit Union,* claiming that the portion relied on is *obiter dicta.* We disagree. In deciding that a freeze, rather than a setoff of assets occurred, the district court was required to discuss the nature of a lien under Kan.Stat.Ann. § 17–2212 (Supp.1987). Merely because a court rejects a theory does not mean that a discussion of the theory is dicta.

6. I.R.C. § 6323(a) provides:

**(a) Purchasers, Holders of Security Interests, Mechanic's Lienors, and Judgment Lien Creditors.**—The lien imposed by section 6321 shall not be valid as against any purchaser, holder of security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary.

adopted in Kansas does not extend "to any right of setoff" or "to a transfer of an interest in any deposit account." Kan.Stat. Ann. § 84–9–104(i) & (j) (1983); *id.* Official UCC Com. 7. Thus, the credit unions do not have a security interest based on the interest created by Kan.Stat.Ann. § 17–2212(a) (Supp.1987). Second, I.R.C. § 6323(h)(1)[7] makes it clear that only security interests arising by contract are covered. *Id.*; Treas.Reg. § 301.6323(h)–1(a). Thus, § 6323(a) does not apply to any statutory lien or right of setoff that the credit unions might have had.

With respect to a lien arising by contract, the loan documents executed by the taxpayers purported to pledge their shares as security for the amount owed. The credit unions contend that they have a "floating" security interest in or lien[8] upon the share accounts, subject to temporary waiver when unrestricted withdrawals are permitted. This approach cannot be squared with existing law. To rely on I.R.C. § 6323(a), the credit unions would need to establish that their interest would be protected against a subsequent judgment lien. I.R.C. § 6323(h)(1); Treas.Reg. § 301.6323(h)–1(a)(2). As noted, art. 9 of the Kansas U.C.C. does not provide for a security interest in share accounts. Thus, we must look at common law concerning pledges to determine whether the credit unions had a security interest in the taxpayers' accounts.

The basis of a pledge is possession by the pledgee. *Walton v. Piqua State Bank,* 204 Kan. 741, 466 P.2d 316, 326 (1970). A pledge of a passbook savings account may be accomplished by delivering possession of the passbook savings account to the bank

---

7. I.R.C. § 6323(h) provides:

**(h) Definitions.**—For purposes of this section and section 6324—

**(1) Security interest.**—The term "security interest" means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

8. Amicus Wyoming Credit Union League refers us to a federal credit union's power "to impress and enforce a lien upon the shares and dividends of any member, to the extent of any loan made to him and any dues or charges payable to him." 12 U.S.C. § 1757(11). The National Credit Union Administration (NCUA) has determined that:

If a credit union evidences its intent to do so, it may impress the lien when the loan is granted. This may be done, for instance, by noting the existence of the lien in the credit union's records at the same time the loan is granted, by reciting in the loan documents that shares and dividends are subject to the lien or are pledged to secure the loan, or by adopting a bylaw or board policy to the same effect. The lien dates from the time it is impressed and applies to all the member's shares outstanding at the time the loan is made. If during the loan term the member's shares are reduced by withdrawal or increased by deposit or dividend payments, the lien will apply to the balance of the same

from time to time and may be enforced with respect to any shares in existence at the time of enforcement. The credit union may enforce the lien on the shares and dividends of the member by applying those funds directly to the outstanding indebtedness, which may include the unpaid loan balance together with interest, fees and other charges. The credit union does not need to obtain a court judgment to enforce the lien, even if a court judgment is usually required under state law before a lien can be enforced.

NCUA, Interpretive Ruling and Policy Statement (IRPS) 82–5 (Dec. 16, 1982). This ruling essentially describes a lien which must be enforced by a right of setoff to be effective, it does not establish priority with respect to a federal tax lien.

Supplementary information with IRPS 82–5 indicates:

The lien "floats" as outstanding obligations, as well as account balances, vary from time to time. The lien enables a credit union to take priority over other creditors when claims are asserted against a member's account. *See* D. Bridewell, *Bridewall on Credit Unions* 710 (1942 ed.) (quoting from the May–June, 1940 edition of *Cooperative Savings,* an official publication of the Farm Credit Administration, the agency then charged with administering the Federal Credit Union Act).

*Id.* While this supplementary information describing the floating lien theory is interesting, it does not convince us that a credit union's "floating lien" would have priority in these circumstances. Without a documented restriction on a taxpayer-member's right to withdraw shares, a federal tax lien which predates a credit union's right of setoff has priority.

or by delivering a valid assignment to the bank. *Id.*, 466 P.2d at 328–29. Although there can be a pledge of an intangible interest, the interest must be represented by an indispensable instrument such as a document of title. Restatement of Security § 1 com. a. (1941). An indispensable instrument is "the formal written evidence of an interest in intangibles so representing the intangible such that the enjoyment, transfer, or enforcement of the intangible depends upon the possession of the instrument." *Walton v. Piqua State Bank*, 466 P.2d at 328 (relying on Restatement of Security § 1 com. e.) "Where the chose in action is not represented by an indispensable instrument, the assignment of the chose in action for the purpose of security is not considered in the Restatement as a pledge." Restatement of Security § 1 com. a. Here, the shares are not evidenced by an indispensable instrument, nor would the language of an assignment constitute an indispensable instrument. *Wellsville Bank v. Nicolay*, 7 Kan.App.2d 172, 638 P.2d 975, 979 (1982). Thus, there is no pledge, quite apart from the disqualifying facts that the credit unions did not hold the shares openly or adversely to the taxpayers or exercise an unlimited power to control the shares. *See Walton v. Piqua State Bank*, 466 P.2d at 327. We must conclude that I.R.C. § 6323(a) does not apply to any contractual interest the credit unions had in the taxpayers' share accounts.

In general, only liens which are choate and attach before the government files appropriate notice have priority over a federal tax lien. *See United States v. Central Bank*, 843 F.2d at 1307. The credit unions argue that this proposition has been superseded by the Federal Tax Lien Act of 1966, specifically I.R.C. § 6323(a) & (h), concerning priority for perfected security interests that would have priority over a subsequent judgment lien. We acknowledge that one of the main purposes of the Federal Tax Lien Act was to conform the federal tax lien law to the U.C.C. S.Rep. No. 1708, 89th Cong., 2d Sess., *reprinted in* 1966 U.S. Code Cong & Admin.News 3722. And when the provisions of the Act provide "an unambiguous federal law answer" as to tax lien priority, it is unnecessary to rely on the concept of choateness. *Aetna Ins. Co. v. Texas Thermal Ind., Inc.*, 591 F.2d 1035, 1038 (5th Cir.1979). Thus, when called upon to determine the relative priority of a federal tax lien and a security interest created by contract, we have recognized the importance of resolving the issue with reference to the Act. *Donald v. Madison Ind., Inc.*, 483 F.2d 837, 840 (10th Cir.1973). Here, the credit unions cannot claim priority based on I.R.C. § 6323(a) & (h) because they lack any contractual security interest which would prevail over a subsequent judgment lien.

■ When not inconsistent with the Federal Tax Lien Act, reference to the choateness doctrine is entirely appropriate. *See United States v. Central Bank*, 843 F.2d at 1307; *J.D. Court, Inc. v. United States*, 712 F.2d 258, 262–64 (7th Cir.1983), *cert. denied*, 466 U.S. 927, 104 S.Ct. 1708, 80 L.Ed.2d 182 (1984). A state-created lien is inchoate unless all steps have been taken to establish a choate lien, that is " 'the identity of the lienor, the property subject to the lien, and the amount of the lien are established.' " *United States v. Pioneer American Ins. Co.*, 374 U.S. 84, 89, 83 S.Ct. 1651, 1655, 10 L.Ed.2d 770 (1963) (quoting *United States v. City of New Britain*, 347 U.S. at 84, 74 S.Ct. at 369). As against an inchoate state-created lien, a federal tax lien has priority. *United States v. Central Bank*, 843 F.2d at 1307.

The credit unions claim priority based on a lien pursuant to Kan.Stat.Ann. § 17–2212(a) however, any such interest was inchoate and contingent. More would have been required of the credit unions to perfect their interest, including action which restricted the rights of the taxpayers to withdraw the funds from the share accounts. The credit unions needed to present evidence that their liens were more than just a possibility. The liens could have been considered for priority had the credit unions decided, prior to the date of the federal tax lien, to restrict the taxpayers' access to the funds or to exercise the lien by setoff. *See United States v. Central Bank*, 843 F.2d at 1310; *Baker v.*

*Nat'l City Bank*, 511 F.2d at 1018. Although the identity of the lienors was clear, the amount of property subject to the lien was not. The amount of the lien was discretionary with the taxpayers because they could withdraw, and reduce any lien, without restriction.

### III.

■ Finally, we must decide whether the district court was correct in imposing the 50% penalty on the credit unions for failing to honor the tax levies. I.R.C. § 6332(c)(2); Treas.Reg. § 301.6332–1(b)(2) ("The penalty described in this subparagraph is not applicable in cases where bona fide dispute exists concerning the amount of the property to be surrendered pursuant to levy or concerning the legal effectiveness of the levy."). The district court imposed the penalty for a variety of reasons. *United States v. Bell Credit Union*, 635 F.Supp. at 504–05. After considering the arguments and authorities of the credit unions below and on appeal, we need only base our decision on one ground. In April 1983, when the notices of levies were served on the credit unions, the state of the law was clearly established concerning the duty of a third-party custodian to turn over taxpayer funds when the taxpayer previously had unrestricted access to those funds. *See, e.g., United States v. Euclid Nat'l Bank*, 510 F.2d at 463 (6th Cir.1975); *United States v. Sterling Nat'l Bank & Trust Co.*, 494 F.2d at 921–22 (2d Cir.1974); *Bank of Nevada v. United States*, 251 F.2d 820, 827 (9th Cir.), *cert. denied*, 356 U.S. 938, 78 S.Ct. 780, 2 L.Ed.2d 813 (1958).

Although the credit unions attempted to put a different spin on their position by stressing the differences between banks and credit unions, they steadfastly ignored the limited defenses to an administrative levy and the critical fact that the taxpayers, at the moment the notices of levy were served, had an unrestricted right to the funds in the share accounts. Questions of priority could have been resolved pursuant to I.R.C. § 7426; merely because we address the priority issues in this case in no way validates the procedure relied upon by the credit unions. Stated another way, although priority issues may be resolved in an I.R.C. § 6332 proceeding, such is a perilous path because of the 50% "lack of reasonable cause" penalty the government can be expected to seek when property held by a third-party custodian is not surrendered and the government must litigate. Reasonable cause for failing to honor the levies, I.R.C. § 6332(c)(2), "should not be read to include a clearly erroneous view of the law, stubbornly adhered to after investigation should have disclosed the error." *United States v. Sterling Nat'l Bank & Trust Co.*, 494 F.2d at 925 (Friendly, J., dissenting).

We have considered other arguments made in the amicus briefs and find them without merit.

AFFIRMED.