**GENERAL MOTORS ACCEPTANCE CORPORATION, Appellant,**

v.

**BELMARES et al., Appellees.**

[Cite as *Gen. Motors Acceptance Corp. v. Belmares* (1992), 75 Ohio App.3d 385.]

Court of Appeals of Ohio,
Defiance County.

No. 4–92–5.

Decided June 23, 1992.

*Hummer Legal Services Corp., L.P.A.,* and *Donal Hummer, Jr.,* for appellant.

*Eleazar Belmares, pro se.*

*Stephen E. Hubbard,* for appellee Employees Own Federal Credit Union.

---

HADLEY, Presiding Judge.

This is an appeal from a January 30, 1992 judgment of the Defiance Municipal Court, releasing the garnishment of plaintiff-appellant, General Motors Acceptance Corp. ("GMAC"), from the account of Eleazar Belmares, judgment debtor, at the Employees Own Federal Credit Union ("Credit Union").

On September 30, 1988, Belmares entered into a "Loanliner Agreement" with the Credit Union whereby Belmares borrowed monies. The terms of the agreement included the following:

"SECURITY INTEREST—You agree that all advances under this Plan will be secured by the shares and deposits in all joint and individual accounts you have with the credit union now and in the future. * * *

"DEFAULT—You will be in default if you do not make a payment of the amount required when it is due. * * *

"When you are in default the credit union can demand immediate payment of the entire amount you owe under this Plan without giving you advance notice. If immediate payment is demanded, you will continue to pay interest at the applicable interest rates in effect under this Plan, until what you owe has been repaid. *If a demand for immediate payment has been made, the shares and deposits given as security for this Plan can be applied towards what you owe.* The Credit Union can also exercise any other rights given by law when you are in default.

" * * *

"NO WAIVER—The credit union can *delay enforcing* any of its rights any number of times without losing its rights. * * * " (Emphasis added.)

On March 19, 1987, appellee Belmares executed a retail installment sales contract with appellant GMAC and subsequently defaulted on the vehicle loan obligation. The vehicle was repossessed and sold. GMAC filed suit and obtained a judgment for the deficiency balance of $5,216.54. GMAC filed a statutory garnishment on September 11, 1991. The Credit Union's reply stated that Belmares had a total of $290.18 worth of shares in two accounts and that the Credit Union objected to the distribution of those funds by the court stating that by virtue of the Loanliner credit agreement Belmares' accounts were already secured against loan balances with the Credit Union.

The trial court, after hearing, sustained the objections and would not permit GMAC to garnish monies from Belmares' account. GMAC appeals that decision.

Appellant's brief sets forth a "Proposition Of Law" which is not prescribed by App.R. 16 or Loc.R. 11 of this court. Appellant is cautioned that future briefs not in compliance with these rules will be rejected.

Treating appellant's "Proposition of Law" as an assignment of error, the error states:

"The trial court erred in ruling that a credit union's 'floating lien' which was contingent and inchoate until the credit union exercised its right to setoff, which setoff right was not exercised until after notice of the subsequent judgment creditor's garnishment lien, had priority over the judgment creditor's garnishment lien."

Federal credit unions have the power to "impress and enforce a lien upon the shares and dividends of any member, to the extent of any loan made to him and any dues payable by him." Section 1757(11), Title 12, U.S.Code. The National Credit Union Administration ("NCUA") has determined that the credit union may impress the lien when a loan is granted by noting the existence of the lien in its records, by reciting the lien in the loan documents, or by law or board policy. The lien dates from the time it is impressed. However, to be effective, the lien must also be enforced. NCUA states that the enforcement is done by applying the shares and dividends of the member directly to the outstanding loan balance. NCUA, Interpretive Ruling and Policy Statement 82–5 (Dec. 16, 1982). That ruling in essence describes a setoff procedure similar to that which is required in the banking industry.

While *United States v. Bell Credit Union* (C.A.10, 1988), 860 F.2d 365, cited in the parties' briefs, deals with an administrative IRS lien which involves different policies and aspects of the law, we find that some of that court's reasoning is applicable to this case:

"The credit unions claim priority based on a lien pursuant to Kan.Stat.Ann. § 17–2212(a) however, any such interest was inchoate and contingent. More would have been required of the credit unions to perfect their interest, including action which restricted the rights of the taxpayers to withdraw the funds from the share accounts. The credit unions needed to present evidence that their liens were more than just a possibility. The liens could have been considered for priority had the credit unions decided, prior to the date of the federal tax lien, to restrict the taxpayers' access to the funds or to exercise the lien by setoff. * * * Although the identity of the lienors was clear, the amount of property subject to the lien was not. The amount of the lien was discretionary with the taxpayers because they could withdraw, and reduce any lien, without restriction." (Citations omitted.) *Id.* at 371–372.

Applying this language to the case at hand, we find that while the credit union may not have to do anything to have its lien initially impressed other than as stated above, we do not believe that a credit union should be able to defeat a court order by merely stating that there have been some internal conversations among its employees concerning invoking a lien on the member's assets. Something extra should be required to enforce the lien in the way of notice to the member so that the member, or anyone doing business with him, is aware what funds have been specifically earmarked for the credit union and what funds are available for withdrawal or for attachment and other purposes. This would reduce the chance for fraud and unnecessary legal actions on the part of creditors and would eliminate a serious undermining of the confidence in credit union activities.

While credit unions do differ from banks in many respects, as to this setoff issue, we find that *Baker v. National City Bank of Cleveland* (C.A.6, 1975), 511 F.2d 1016, 1018, is appropriate in stating:

" * * * Book entries may be the last step, rather than the first, but the act of setoff is not complete until three steps have been taken: (1) the decision to exercise the right, (2) some action which accomplishes the setoff and (3) some record which evidences that the right of setoff has been exercised."

Until the credit union took some affirmative action to restrain the member's control over the funds or took constructive possession of the accounts, there was nothing but an intention on the part of the credit union and its right of lien was inchoate or contingent and the lien was not enforced by applying the funds directly to the outstanding indebtedness as described in NCUA, Interpretive Ruling and Policy Statement 82-5, *supra.* Since the trial court not only found a consensual floating lien had been established, but also found that the same had been enforced, we must sustain the assignment of error and reverse the trial court's decision.

*Judgment reversed*
*and cause remanded.*

EVANS and THOMAS F. BRYANT, JJ., concur.