Don WILLIAMSON and Jodie K. Williamson, Plaintiffs and Respondents,

v.

George R. WANLASS and Lorna L. Wanlass, Defendants and Appellants.

No. 14076.

Supreme Court of Utah.

Jan. 30, 1976.

Gary N. Anderson, Hillyard & Gunnell, Logan, for defendants and appellants.

Walter G. Mann and Jeff R. Thorpe, Mann & Hadfield, Brigham City, for plaintiffs and respondents.

CROCKETT, Justice:

Plaintiffs Don and Catherine Jodie Williamson brought suit to enforce an acceleration clause and demand for the entire balance on an installment note, given by the defendants Wanlass, as part of the payment on the purchase of the plaintiffs' farm property near Paradise in Cache County. A trial to the court resulted in findings and judgment in favor of the plaintiffs for $18,023.50, plus interest, and also for attorneys' fees of $2,000.

The defendants appeal, contending that they were not accorded their entitlement of reasonable notice and an opportunity to make payments currently due before the declaration of acceleration.

During the early part of 1971 the defendants negotiated with the plaintiffs to buy the latter's farm. Both parties went to the same attorney, the late Charles P. Olson of Logan, who handled the preparation of the necessary documents. Insofar as material here, the contract which the parties executed provided for a purchase price of $110,975 to be paid by $1,975 in cash, $89,000 by the Wanlasses obtaining approval of a loan for that amount, and the remainder of $20,000 by the note here involved. It provided for payments of $162.-42 principal and interest on the first day of each month, beginning June 1, 1971, until paid; and was secured by a second mortgage on the property. The Wanlasses made the down payment of $1,975 and obtained the $89,000 loan, which was paid over to the Williamsons.

The provisions of the note pertinent here are:

That "if any installment is not paid at the time it becomes due, the holders of this note, at their option, may declare the whole due and payable . . . "; and that "the makers . . . severally waive presentment for payment and notice of non-payment of this note."

Commencing June 1, 1971, the defendants made their monthly payments by mail, until July of 1973, when the difficulties described below occurred. We follow the standard rule that we view any disputed evidence in the light favorable to the findings and judgment of the trial court. In doing so, we take certain important statements, those which are included within our quotation marks, as plaintiffs assert the facts in their own brief. "The evidence . . . shows that the sellers [plaintiffs] received late payments on 15 of the 25 payments made, but the sellers never ac-

quiesced in or accepted the late payments." Further, "The evidence is clear that at least on two occasions, Mrs. Williamson told Mrs. Wanlass that the payments were to be made on time . . . [and] . . . on February 20, 1973, a letter was sent by Charles P. Olson [attorney] . . ."

The letter stated:

Dear Folks:

I have just had a phone call from the Williamsons, and they are quite concerned over the fact that you have been somewhat late, sometimes as high as three months, in making your payments.

This inconveniences the Williamsons to no end and, as you know, *they have certain remedies* under their contract, such as declaring the full amount due and payable, which, *if they are aggravated*, they will pursue. In a spirit of harmony, *it would be nice* if the payments could be made on time so there would not be any further friction arise.

With kind regards, we are, [etc].

After this letter there does not appear to have been any further difficulty about the payments until five months later, in July, 1973. Mr. Wanlass testified that on July 9, 1973, he prepared a check, addressed to the Williamsons, and deposited it in the mail. The Williamsons say they never received that check. On August 3, 1973, the Williamsons went to Mr. Olson and had him prepare a notice of acceleration and demand for the entire balance, indicating that the July payment had never been received. The Wanlasses received the notice on August 7, 1973. Mr. Wanlass immediately attempted to telephone Mr. Williamson, but was unsuccessful. He then stopped payment on the July check and made out a new check for the July payment. He sent this with a letter of explanation to Mr. Williamson. In another envelope, postmarked August 7, 1973, Mr. Wanlass sent a check dated August 1, 1973, for the August payment.

With respect to the occurrence just delineated, the plaintiffs' brief further states:

The buyers' own check shows that the check, which was supposed to have been mailed for the July 1, 1973, payment, was not dated until July 9, 1973, which would be at least nine days late when made, by the evidence most favorable to the buyers.

The August payment was in an envelope post-marked August 7, 1973.

Every payment due, including those up to the date of the trial, had been tendered to the plaintiffs, or to their attorney, which tenders were refused. None of the checks after the one for June, 1973, had been cashed. This fact itself is something of a commentary on the plaintiffs' assertion as to how badly they needed these payments exactly on the due date; and even more so when this is considered in conjunction with the fact that the $91,000 had been turned over to the plaintiffs as payment on their farm. Nevertheless, the plaintiffs refused the tender and caused this suit to be filed.

The clause which allows for acceleration in case of default, if strictly enforced, is a severe covenant, the invocation of which has similarity to other forfeitures. The imposition of such severe conditions is not favored in the law;[1] and one who seeks to impose them must not, either by acts or omission permit another to assume that the covenant will not be strictly enforced, then "crack down" on the obligor by rigidly insisting on enforcement, without giving some reasonable notice and opportunity to comply. This is a doctrine of equity which is firmly established in our law by numerous decisions. A foundational case is *Christy v. Guild*[2] to the effect that when one has accepted overdue payments so that the payor has reasonably relied on such course of conduct and been led to believe that the payee will tolerate a failure of strict perform-

1. See *Jensen v. Nielsen*, 26 Utah 2d 96, 485 P.2d 673, and authorities therein cited.

2. 101 Utah 313, 121 P.2d 401.

ance, the latter cannot abruptly change course and insist upon strict adherence to the covenant imposed and enforce a harsh forfeiture.[3]

The most recent pronouncement of this court on this subject is in *Paul v. Kitt*,[4] some of whose facts are closely similar to those here. It there appeared that the monthly payments on a contract had been made for over two years; that some of them had been made late; and that on prior occasions two phone calls and a letter had taken care of the difficulties when payment was not made on the due date. The plaintiff without prior warning gave notice saying, "I hereby notify you of the termination of your contract." In refusing to affirm an award of attorneys' fees, the court commented that: "There was no evidence to indicate that the parties, by phone or personal contact, made any attempt to iron out what appears to have been relatively minor problems," and further that the defendant by accepting late payments ". . . could not require strict performance without having given the buyers fair warning to that effect."

■ Counter to this, the plaintiffs argue that that doctrine and the cases supporting it apply only to forfeitures under real estate contracts; and that that doctrine is one of equity which has no application to this action at law to collect on a promissory note. It is true that the doctrine is spoken of as one of equity and good conscience and that it has been applied to real estate contracts. The rules of equity arose as a means of avoiding or ameliorating the rigidities and harshness of some of the rules and remedies of law. It is also to be observed that the differences between law and equity are not so distinct as they were in former times. The lines between them have become blurred and they have become for the most part blended together in what we refer to generally as equity and justice. Our Constitution, Art. VIII, Sec. 19, provides: "There shall be but one form of civil action, and law and equity may be administered in the same action."[5]

Consistent with the foregoing, equitable claims or defenses may be asserted and tried along with or against legal claims or defenses in the same action;[6] and equitable principles may be applied in an action at law.[7] We can see no reason why the doctrine we have just spoken of as being rooted in equity and good conscience should have any affinity for, or limitation in application to, any particular type of conduct or controversy. The principles of equity and justice are universal; they apply wherever appropriate and necessary to enforce rights or to prevent oppression and injustice.[8]

■ There is another significant matter to be considered in analyzing the problem presented in this case. The note in question is negotiable in form and is therefore subject to the provisions of our Uniform Commercial Code. The subject of acceleration of payment is dealt with in Section 70A–1–208, U.C.A.1953:

70–1–208. Option to accelerate at will. —A term providing that one party may accelerate payment . . . "at will" or "when he deems himself insecure" or in words of similar import shall be construed to mean that *he shall have power to do so only if he in good faith believes that the prospect of payment or performance is impaired.* The burden of establishing lack of good faith is on the party against whom the power has been exercised.

3. See *Jacobsen v. Swan*, 3 Utah 2d 59, 278 P.2d 294, and *Perkins v. Spencer*, 121 Utah 468, 243 P.2d 446, and cases therein cited.

4. 544 P.2d 886 (Utah), 1975.

5. This is implemented by Rule 2, U.R.C.P.

6. See *Columbia Trust Co. v. Anglum*, 63 Utah 353, 225 P. 1089.

7. *Marlowe Inv. Corp. v. Radmall*, 26 Utah 2d 124, 485 P.2d 1402.

8. E. g., *U–Beva Mines v. Toleda Mining Co.*, 24 Utah 2d 351, 471 P.2d 867; *Calhoun v. Universal Credit Co.*, 106 Utah 166, 146 P.2d 284; and see *Wingets, Inc. v. Bitters*, 28 Utah 2d 231, 500 P.2d 1007, and cases cited therein.

It will be noted from the emphasized language that this statute is in harmony with the principles of equity we have discussed above.[9] It seems to recognize that acceleration is a harsh remedy which should be allowed only if there is some reasonable justification for doing so, such as a good faith belief that the prospect of payment is impaired. There was no such showing made in this case. From the fact that the plaintiffs had a second mortgage on this extensive property, there can be little doubt that the note would be paid, principal and interest.

We revert to a consideration of the facts in the light of the principles discussed herein. Although the plaintiffs state that they had "never acquiesced in or accepted the late payments," that does not appear to be wholly accurate. The fact that they did accept late payments is without question. Whether they in fact acquiesced in doing so may be a matter for someone else to judge. In any event they followed the pattern of the cases referred to wherein a creditor allows a debtor to miss or make late payments. They constituted Attorney Olson as their attorney and agent to write the letter of February 20th quoted above. Inasmuch as they claim the advantages of that letter, they must also accept its disadvantages. Due both to what it said, and its general tenor, it could be regarded, not as any demand or ultimatum, but as a friendly and gentle admonition that "it would be nice if the payments could be made on time. . . ."

■■■ Another significant fact is that instead of making a forthright declaration that the plaintiffs would insist strictly upon the payments being made on the due date or the whole debt would be accelerated, the letter placed a condition upon such a declaration: that they would do so *"if* they are aggravated." The question arises as to how the defendants would know that condition came about unless someone so advised them. It is generally true that if there is a condition to be fulfilled, of which one party would be aware and the other would not, it is regarded as fair and proper that the one who knows should be obliged to notify the other party affected thereby, and give him a reasonable opportunity to react thereto.

■■■ In applying principles of equity and justice to the facts in this case we are unable to see how the acceptance of the payments due as tendered by the defendants would have resulted in any injustice to the plaintiffs. The same is true under our conception of the proper disposition of this case. They can still give a proper notice (which purpose this suit certainly accomplishes) that they will insist upon the strict compliance with terms of the note; they are entitled to collect the payments as specified therein, together with the interest. Except for whatever burdens they themselves created by refusal of the tender of all of the money then due them, and their precipitate insistence upon bringing this lawsuit, they will receive full acquittance of what their contract provided for. (All emphasis herein added.)

On the basis of what we have said herein, it is our decision that the judgment should be reversed. Cost to defendants.

HENRIOD, C. J., and ELLETT, TUCKETT and MAUGHAN, JJ.

---

9. Sec. 70A–1–103, U.C.A.1953, provides that, unless displaced by the provisions of the Code, the principles of law and equity shall supplement it.