No. 56,535

HERBERT R. KARNER and RUTH D. KARNER, *Plaintiffs-Appellants*, v. JIM WILLIS and RONALD F. LLOYD, a/k/a RON LLOYD, *et al.*, · *Defendants-Appellees*, v. KANOPOLIS STATE BANK, *Garnishee/Defendant-Appellee*.

(710 P.2d 21)

Opinion filed December 6, 1985.

*Dennis J. Keenan*, of Keenan, Mauch & Keenan, P.A., of Great Bend, argued the cause, and *Phillip Eugene Porter*, of the same firm, was on the brief for appellants.

*Ron Svaty*, of Aylward, Svaty & Sherman, of Ellsworth, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

PRAGER, J.: This is a dispute between two judgment creditors and a garnishee bank over funds held by the bank in the defendant Lloyd's bank account. In answer to the garnishment, the garnishee bank responded that it had no funds of the defendant because it had exercised its right of setoff against the defendant's account. The plaintiff creditors contended that the setoff was wrongful. The district court held in favor of the bank. The plaintiffs then appealed, and the Court of Appeals affirmed in a published opinion in *Karner v. Willis*, 10 Kan. App. 2d 432, 700

P.2d 582 (1985). The Supreme Court granted the plaintiffs' petition for review.

The facts in the case were undisputed and essentially were as follows: On March 15, 1983, the plaintiffs, Herbert and Ruth Karner, obtained a judgment against the defendants, Willis and Lloyd, in the sum of $58,352.40 in the State of Oklahoma. On April 4, 1983, a duly authenticated copy of the Oklahoma judgment was filed in the district court of Ellsworth County. On August 3, 1983, an order of garnishment was issued by the district court of Ellsworth County directed to the Citizens State Bank of Ellsworth and the Kanopolis State Bank of Kanopolis. By mistake, a sheriff's deputy served the garnishment addressed to the Citizens State Bank on the Kanopolis State Bank. Dale E. Hoosier, vice-president of Kanopolis State Bank, who received the garnishment, called the Ellsworth County sheriff's department and notified them that he had been served with a garnishment directed to the Citizens State Bank. The dispatcher of the sheriff's department notified the deputy of the mistake, and he immediately returned to the Kanopolis State Bank and exchanged the Citizens State Bank garnishment for the garnishment directed to the Kanopolis State Bank.

During the interim period, Dale E. Hoosier, acting on behalf of the Kanopolis State Bank, exercised a setoff against the account of the defendant debtor, Lloyd. In the Court of Appeals opinion, the Kansas statutes which control the right of a creditor bank to accelerate the maturity of a debt and to exercise a right of setoff against the debtor's account are discussed. Simply stated, K.S.A. 84-1-208 states that a contractual term providing that a party may accelerate payments or performance "when he deems himself insecure" or in words of similar import shall be construed to mean that he shall have the power to do so only if he *in good faith* believes that the prospect of payment or performance is impaired.

In the present case, the defendant debtor was indebted to the bank on a note which contained a provision which permitted the bank to accelerate the maturity of the debt if it deemed itself insecure. The trial court, in effect, found that the garnishee bank had acted in good faith in accelerating the debt and in setting off the note against the debtor's bank account.

The Court of Appeals viewed the basic issue on appeal to be

whether there was substantial competent evidence in the record to support the findings of the trial court that, at the time the bank executed the setoff, it in good faith believed that the prospect of payment of the note was impaired. The Court of Appeals affirmed on the basis that "good faith" was a fact issue which the trial court resolved in the bank's favor, and found there was substantial competent evidence to support the trial court's findings.

When the trial court has made findings of fact and conclusions of law, the scope of appellate review is for this court to determine whether the trial court's findings are supported by substantial competent evidence. *Woods v. Midwest Conveyor Co.*, 236 Kan. 734, Syl. ¶ 2, 697 P.2d 52 (1985). The appellate court will not weigh the evidence or pass upon the credibility of the witnesses. The reviewing court must review the evidence in the light most favorable to the party prevailing below. *Marcotte Realty & Auction, Inc. v. Schumacher*, 229 Kan. 252, 254, 624 P.2d 420 (1981).

At the hearing of this case, the only witness who testified was Dale E. Hoosier, the vice-president of the garnishee, Kanopolis State Bank. Hoosier testified that the day before the garnishment was served, the bookkeeper for the debtor depositor had been to the bank and requested signature cards to change the account name and signatures. Hoosier was aware of the Oklahoma judgment filed in Ellsworth County against the debtor earlier that year. At the time he made the setoff, he did not actually know whether the debtor was insolvent or not. The debtor had not been delinquent on any payments and was current on August 3, 1983, when the setoff was made. Mr. Hoosier testified that he deemed the bank was impaired in its security because the garnishment would have resulted in the sum of $40,000 being taken from the debtor's operating account as a farm implement dealer and, as a result, "he would have had no liquidity to operate." The bank records showed that on August 16, 1983, 13 days after the setoff, the bank loaned the debtor an additional $50,000, but in the interim period the debtor had paid $99,000 on the loan and pledged his used farm equipment as additional collateral.

In its opinion, the Court of Appeals recognized that there certainly was evidence presented that, viewed objectively, the

bank was not insecure, but that the test of good faith dictated by K.S.A. 84-1-208 is subjective and requires only honesty in fact. *Iola State Bank v. Bolan,* 235 Kan. 175, 183, 679 P.2d 720 (1984); and K.S.A. 84-1-201(19). The Court of Appeals then applied the subjective test required by the statute and concluded that the trial court's finding of good faith was supported by substantial competent evidence. The majority of this court has concluded from the record that the Court of Appeals correctly determined the issue.

The judgment of the district court is affirmed. The judgment of the Court of Appeals is affirmed.

HERD, J., dissenting: I disagree with the majority holding that Kanopolis State bank was acting in good faith when it deemed itself insecure on Ronald F. Lloyd's note and exercised its right of setoff against his checking and reserve accounts.

The evidence in this case consists of the testimony of Dale E. Hoosier, bank vice-president, the Lloyd note and the bank ledger.

Mr. Hoosier acknowledged that the bank officials knew an Oklahoma judgment in the amount of $58,352.40 had been properly filed of record in Ellsworth County against Mr. Lloyd. He testified the judgment did not make the bank deem itself insecure. He further testified that Mr. Lloyd's note with his bank was secured by a first mortgage on Ellsworth County real estate and did not mature until more than four months after the August 3 setoff. Hoosier also testified Lloyd was not delinquent in any note payments when the setoff was made. The bank ledger sheet shows that thirteen days after the setoff of $39,178.20 from Lloyd's account was applied on his note, the bank loaned Lloyd an additional $50,000. Mr. Hoosier testified the reason he deemed the bank insecure with regard to Lloyd was because he knew a garnishment summons was going to be served on the bank to aid in satisfying the foreign judgment against Lloyd.

The bank argues the garnishment of Lloyd's bank accounts would have destroyed his liquidity and thus justifies its deeming itself insecure. This argument ignores the nature of a secured note. Neither the garnishment nor the foreign judgment affect the bank's security. As testified to, the bank was satisfied with the security for the Lloyd debt. The garnishment was seeking

payment from Lloyd's unmortgaged assets. The bank's lending Lloyd an additional $50,000 thirteen days after the setoff is clear evidence it did not, in good faith, deem itself insecure.

A creditor has the power to accelerate debt payments when he deems himself insecure only if he in good faith believes the prospect of payment of the debt is impaired. K.S.A. 84-1-208. "Good faith" is defined at K.S.A. 84-1-201(19) as "honesty in fact in the conduct or transaction concerned."

While it is true, as the majority points out, that the test of good faith is a subjective one which must be considered from the viewpoint of the creditor, that does not mean a creditor can accelerate a note to maturity at its whim. As stated by the Utah Supreme Court in *Clayton v. Crossroads Equipment Co.,* 655 P.2d 1125, 1128 (Utah 1982), "The obvious purpose of requiring that a secured party act in good faith is to impose the basic obligation of fair dealing, and to protect the purchaser from the mere whim or caprice of the secured party." If the good faith requirement of K.S.A. 84-1-208 is to have any meaning or purpose, we cannot allow the bank to use its acceleration and setoff authority to defeat a creditor's rights under the garnishment statute as Kanopolis State bank did here. This was the determination reached by the Indiana Court of Appeals in *Universal C.I.T. Credit Corp. v. Shepler,* 164 Ind. App. 516, 520-21, 329 N.E.2d 620 (1975). There, the Indiana court held that if the good faith provisions of Indiana Code Annotated § 26-1-1-208 and 26-1-1-201(19) (Burns 1974) (the Indiana counterparts to K.S.A. 84-1-208 and 84-1-201[19]) were to have any real effect, they must be modified to include a more objective standard, *i.e.,* what would a "reasonable man" do under the same set of facts and circumstances. See also *Williamson v. Wanlass,* 545 P.2d 1145, 1149 (Utah 1976), where the Supreme Court of Utah recognized that acceleration is a harsh remedy which should be allowed only if there is some reasonable justification for doing so, such as a good faith belief that the prospect of payment is impaired as expressly provided in the U.C.C.

I would hold, as have courts of other jurisdictions, that in considering whether a creditor acted in good faith in deeming itself insecure, a secured party must show compelling facts of insecurity because the secured creditor is in a less precarious position than is an unsecured creditor. *McKay v. Farmers &*

*Stockmens Bank of Clayton,* 92 N.M. 181, 183, 585 P.2d 325 (1978); *Van Horn v. Van De Wol, Inc.,* 6 Wash. App. 959, 497 P.2d 252 (1972), 61 A.L.R.3d 241.

Here, the debtor's note with the bank was secured by a first mortgage on real estate. There is no evidence the collateral was impaired in any way. Nor is there any evidence the debtor was delinquent in payments on the note or that the prospect of payment was impaired. There is no evidence, compelling or otherwise, to support the bank's contention its setoff was in good faith. To be in good faith, the bank's action must have been in response to a bona fide belief, based on evidence, that its prospect of payment from Lloyd was impaired.

Finally, we find the reasoning of the Utah Supreme Court in *Williamson v. Wanlass,* 545 P.2d 1145, instructive. In *Williamson,* the debtors' promissory note was secured by a second mortgage on farm property which the debtors had purchased for $111,000. The court found that the holders of the promissory note failed to show a good faith belief that prospect of payment was impaired, justifying acceleration of the note under Utah Code Ann. 70A-1-208 (1980). The court made this finding notwithstanding the fact that the defendants were frequently late in making monthly installment payments on the note. The key factor was the fact that the plaintiffs had a second mortgage on extensive property and there was little doubt the note would be paid, principal and interest.

As in *Williamson,* here there is no evidence indicating an inability of the debtor to pay off the note, especially in light of the bank's first mortgage on Lloyd's Ellsworth County real estate. The debtor here was not delinquent in any payments, in contrast to the debtor in *Williamson.*

Under the construction given K.S.A. 84-1-208 by the majority opinion, any debtor who signs a standard note is vulnerable to acceleration of his note and setoff of his bank account upon the unsubstantiated statement of a bank that it deems itself insecure. In *Iola State Bank v. Bolan,* 235 Kan. 175, Syl. ¶ 8, 679 P.2d 720 (1984), we construed the good faith rule:

"Where a bank knows sums deposited in the account of one of its depositors belong to a third party, it does not act in good faith when it applies such funds of the third party against the depositor's debts to the bank. Under such circumstances the third party has an action directly against the bank for conversion of the third party's funds from the debtor's accounts."

In *Iola State Bank,* the bank knew of outstanding checks from its delinquent borrower to various farmers for the purchase of grain but nevertheless set off the borrower's account, dishonoring his outstanding checks. We held the bank's action was not in good faith. Here, the bank knew of the judgment against its borrower and that a garnishment summons was en route to seize the bank account for application on the judgment. With this information, Kanopolis State bank accelerated Lloyd's note and set off his bank account before the impending garnishment attached, even though the Lloyd note was not delinquent. This case is analogous to *Iola State Bank,* but stronger, because here the borrower's note was not delinquent. Thus, according to our own precedent, the Kanopolis State Bank lacked good faith in its setoff of Lloyd's account.

I would reverse.

HOLMES, J., joins the foregoing dissenting opinion.