CLAUDE AND RUBY DAVIS, APPELLANTS, v. NEVADA NATIONAL BANK, RESPONDENT.

No. 16611

May 27, 1987                                        737 P.2d 503

*Frank Cremen,* Las Vegas, for Appellants.

*Lovell, Bilbray & Potter,* Las Vegas, for Respondent.

---

## OPINION

*Per Curiam:*

In April, 1970, appellants and one Paul Bennett (the "Contractor") entered into an agreement with respondent (the "Bank") whereby the Bank agreed to loan appellants funds for the construction of a home in Las Vegas.

During the course of construction, appellants noted serious defects in the foundation of the home. Appellants asked the Bank's loan officer to withhold payments until the problems were

corrected; the Bank refused, apparently without any investigation of the truth of appellant's assertions.

Although appellants eventually obtained a judgment against the Contractor for his deficient construction, the Contractor's bankruptcy prevented collection of damages. Appellants then sued the Bank, which contended that it simply could not be held liable for construction deficiencies. The district court agreed and granted summary judgment in favor of the Bank. For reasons stated herein, we reverse and remand for further proceedings.

When a construction lender grants a loan to a borrower but retains the funds pending distribution, and in fact distributes the loan proceeds itself, that lender is not totally free to disregard the interest of its borrower. We agree that such a lender normally has no duty to exercise care to identify unworkmanlike or deficient construction, or to accede to requests to withhold payment from contractors. And it would be legally sound and commercially appropriate to uphold a lender's decision to continue paying a contractor if, after reasonable investigation, the lender concluded in good faith, albeit erroneously, that its borrower's request to withhold payment was unwarranted. However, it would be unjust to permit a lender, with impunity, to simply disregard a borrower's complaint of *substantial* construction deficiencies affecting the structural integrity of a project, thereby placing a borrower in the potentially untenable position of having to fully repay the lender for loan funds expended, contrary to a borrower's particularized entreaties, for a substantially defective residence or structure. A lender must pursue such a course at its own risk. Nevada's immunity statute, NRS 41.590,[1] does not dictate a contrary holding. Its protection does not extend to liabilities incurred as a result of a lender's activities other than "the loan transaction." In the instant case, the Bank's liability would arise not from the loan transaction, but from the Bank's later breach of a nonconsensual duty of care in the disbursement of construction loan proceeds.

In rendering summary judgment, the trial court noted that appellants' action was solely for breach of contract. However, the

---

[1]NRS 41.590 reads as follows:

A lender who makes a loan of money, the proceeds of which are used or may be used by the borrower to finance the design, manufacture, construction, repair, modification or improvement of real or personal property, shall not be held liable to the borrower or to third persons for any loss or damage occasioned by any defect in the real or personal property so designed, manufactured, constructed, repaired, modified or improved or for any loss or damage resulting from the failure of the borrower to use due care in the design, manufacture, construction, repair, modification or improvement of such real or personal property, unless the loss or damage is the result of some other action or activity of the lender than the loan transaction.

contract between the parties does not conflict with or otherwise preclude the application of the principles set forth above. The loan agreement provided, in relevant part, that the Bank had no obligation to inspect the home under construction and was not responsible for proper disbursement of the loan, and that no terms other than those in the writing had been "agreed to." Each of these provisions, however, is subject to established doctrines of contractual interpretation, including: (1) the court shall effectuate the intent of the parties, which may be determined in light of the surrounding circumstances if not clear from the contract itself, Barringer v. Gunderson, 81 Nev. 288, 302-03, 402 P.2d 470, 477-78 (1965); and (2) ambiguities are to be construed against the party (in this case, the Bank) who drafted the agreement or selected the language used, Caldwell v. Consolidated Realty, 99 Nev. 635, 638, 668 P.2d 284, 286 (1983).

The provision that the Bank was not responsible for proper disbursement of the loan proceeds could, if taken literally, relieve the Bank of substantially all its contractual duties. Such a result obviously was not intended. It is apparent that this provision relates in substantial part to the Bank's express contractual right to do of its own volition what it failed to do at appellants' request: suspend payment if the work is faulty. The disavowal of a duty to inspect, in turn, was written with an eye to prevent implication of such a duty from the fact that the Bank reserved a contractual right of inspection. It was not intended to disavow a duty implied by law independently of the parties' agreement. Finally, a statement that the parties did not "agree to" additional terms does not bear on duties implied by law even in the absence of specific agreement. Thus, we hold that under the circumstances present here, the Bank had a duty to conduct a reasonable investigation and reach a bona fide conclusion as to the validity of appellants' request, at the risk of incurring liability for wrongful disbursement of funds.[2]

Nothing we have said should be interpreted beyond the comparatively narrow confines of the instant case. Specifically, under usual construction loan terms and conditions, no lender should consider itself at risk if it elects not to generally inspect the progress of the construction of a project financed by the lender. Nor is a lender to consider itself at risk if it volitionally elects to inspect and does so negligently or ineffectively. A lender also has

---

[2]We express no opinion as to the legal effect of a lender's attempt to circumvent today's holding by resort to emphatic contract language notifying its borrower that alternative methods of protection, such as a contractor's completion bond, must be secured.

no duty, under our instant holding, either to withhold payment at borrowers' requests or to inspect upon such requests, for construction deficiencies or omissions of a type that inevitably will occur in all projects and that commonly are remedied by a contractor as part of a "punch list" prior to project completion and the release of retained funds. Stated otherwise, lender liability may arise under a construction loan when: (1) the lender assumes the responsibility or the right to distribute loan proceeds to parties other than its borrower during the course of construction; (2) the lender is apprised by its borrower of substantial deficiencies in construction that affect the structural integrity of the building; (3) the borrower requests that the lender withhold further distributions of loan proceeds pending the satisfactory resolution of the construction deficiency; (4) the lender continues to distribute loan proceeds in complete disregard of its borrower's complaints and without any bona fide attempt to ascertain the truth of said complaints; and (5) the borrower ultimately is damaged because the substance of the borrower's complaints was accurate and the borrower is unable to recover damages against the contractor or other party directly responsible for the construction deficiencies.

In accordance with the above analysis, we have concluded that summary judgment for the Bank was inappropriate. We reverse and remand for a trial on the merits with the Bank's liability, if any, to be determined according to the principles expressed in this opinion.