No. 65,337

ROBERT W. DANIELS and PATRICIA L. DANIELS, *Appellants*, v.
ARMY NATIONAL BANK, *Appellee*.

(822 P.2d 39)

Opinion filed December 6, 1991.

*Jeffrey L. Baxter*, of Chapman, Waters, and Baxter, of Leavenworth, argued the cause and was on the brief for appellants.

*John F. Thompson*, of Davis, Beall, McGuire & Thompson, Chartered, of Leavenworth, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: This lender liability action is before this court on the petition for review of a Court of Appeals decision (unpublished opinion filed April 26, 1991). Robert and Patricia Daniels purchased land and contracted with Gerald Gerleman to construct their home. On Gerleman's recommendation, the Daniels obtained a $106,400 construction loan from Army National Bank (the bank) to construct their new home in Leavenworth County.

The bank knew that Robert Daniels was a military officer stationed in Saudi Arabia on a sensitive mission and that Patricia Daniels, his wife, was living in Denver during the time the home was to be constructed. When the Daniels returned to Leavenworth, they found substantial construction defects in the house. Mrs. Daniels informed the bank of the defects. Though informed of the defects, without inspecting the house, the bank distributed the balance of the construction loan to the builder.

The Daniels sued both Gerleman and the bank. Gerleman was dismissed from the action after he filed for bankruptcy. The Daniels alleged the bank breached its fiduciary duty, negligently disbursed the construction loan proceeds, and breached the covenant of good faith and fair dealing. In a separate action the bank sued the Daniels, alleging they had defaulted on the loan obligation and requesting judgment on the outstanding loan and foreclosure of the mortgage. The two actions were consolidated. Both parties moved for summary judgment. The district court granted partial summary judgment to Army National Bank, finding that no fiduciary duty was created by the loan agreement and no special relationship existed between the parties. The court reserved the remaining issues for trial.

Prior to trial the unresolved issues were submitted to the district court on stipulated facts. Relying on the stipulated facts, the district court denied the Daniels' claim that the bank negligently disbursed loan proceeds or breached its covenant of good faith and fair dealing. The district court then granted Army National Bank summary judgment on the construction note and foreclosure of its mortgage.

The Daniels appealed, claiming the district court erred in ruling on summary judgment that (1) no fiduciary duty existed (a) by reason of the loan agreement or (b) by reason of a special relationship between the Daniels and the bank; (2) the bank did not breach its covenant of good faith and fair dealing with the Daniels; (3) the bank had not negligently disbursed the loan proceeds; and (4) the bank was entitled to foreclosure on the construction loan mortgage.

The Court of Appeals affirmed the district court's holding that the loan agreement did not create a fiduciary duty between the bank and the Daniels because the agreement allowed the bank

to inspect the work progress and quality of workmanship for its protection, and did not require the bank to inspect for the benefit of the Daniels. It found the loan agreement created a debtor-creditor relationship, not a fiduciary relationship. It also determined that the criteria for imposing lender liability set forth in *Davis v. Nevada National Bank,* 103 Nev. 220, 737 P.2d 503 (1987), had not been satisfied by the Daniels. The Court of Appeals found the bank had neither breached its duty of good faith and fair dealing, nor negligently disbursed the loan proceeds to the Daniels' builder. The Court of Appeals concluded that because the Daniels never made a payment on the construction loan note, they are in default and the bank is entitled to foreclosure of the construction mortgage.

In their petition for review, the Daniels state the issues as:
1. Whether the court erred in ruling on summary judgment that no fiduciary duty existed by any special relationship between the borrowers and the bank;
2. whether the court erred in ruling on a submission of agreed facts and pleadings that the bank did not breach its covenant of good faith and fair dealing with the borrowers; and
3. whether the court erred in ruling on the submission of agreed facts and pleadings that the bank should be granted foreclosure on the construction loan mortgage.

In addition, the Daniels request that the public policy stated by the Supreme Court of Nevada in *Davis v. Nevada National Bank* be adopted by this court.

Summary judgment is proper when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." On review, "an appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment." *Patterson v. Brouhard,* 246 Kan. 700, 702, 792 P.2d 983 (1990).

There are two types of fiduciary relationships, those created by contract and those implied in law from the surrounding facts and the relationship of the parties. *Denison State Bank v. Madeira,* 230 Kan. 684, 691, 640 P.2d 1235 (1982). The Daniels contend that the special relationship between the parties created a fiduciary duty implied in law.

The traditional rule is that the lender-borrower relationship creates no special duty. *Denison State Bank v. Madeira*, 230 Kan. at 695. We have followed this rule, imposing liability on financial institutions only in those instances involving fraud and conflicts of interest. See Rossi, *Lender Liability in Kansas: A Paradigm of Competing Tort and Contract Theories*, 29 Washburn L.J. 495, 503-05 (1990) (comprehensive review of Kansas lender liability cases). *Cf. Paul v. Smith*, 191 Kan. 163, 170, 380 P.2d 421 (1963) ("agreements establishing fiduciary relationships, if not in writing, must be clear and convincing").

The trial court found that the loan agreement between Major Daniels and Army National Bank did not impose a duty on the bank to inspect the construction site for the protection of the Daniels. After reviewing the contract, we agree. The agreement provides the bank *may* inspect the progress of the work and the quality of the workmanship, and the bank's policy is "to make such inspections as may be necessary for *its* protection." (Emphasis added.) The agreement further states the borrowers have the responsibility to contract with architects, contractors, and subcontractors, and that the bank assumes no responsibility for the performance of these contracts or the improvement of the borrower's property. No fiduciary duty is created between the bank and the Daniels by the loan agreement.

The Daniels next contend the bank knew they would be absent during construction of their home and assured them that it would be a "watchdog," conducting periodic inspections as the home was constructed. The Daniels assert the bank not only failed to make periodic inspections during the construction of the home but also negligently disbursed loan proceeds to the builder and refused to inspect the builder's work after Patricia Daniels notified the bank of substantial defects in the construction.

There is no doubt that the bank had knowledge that the Daniels would be absent during construction of the home and was informed by the borrowers there were substantial defects in the construction of the home. However, the bank never represented that it would inspect the property for the protection of the Daniels. Major Daniels admits that the bank had no duty to inspect. It must be noted that Gerleman, not the bank, assured Major Daniels the bank would be a watchdog and control disbursements

of the money on a percentage of completion basis. Although the Daniels complained of construction difficulties to the lender, they never requested the bank to cease disbursement of funds to their builder.

A person who is not under any disability or disadvantage may not abandon all caution and responsibility for his own protection and unilaterally impose a fiduciary relationship on another without a conscious assumption of such duties by the one sought to be held liable as a fiduciary. *Denison State Bank v. Madeira*, 230 Kan. 684, Syl. ¶ 10. The Daniels could not unilaterally impose a fiduciary duty on Army National Bank. On several occasions Major Daniels stated that he placed his confidence in Gerleman. Major Daniels knew he would be absent during much of the construction period. He elected to enter into the construction agreement, obtain a loan from the bank, and trust Gerleman to perform the contract in a workmanlike manner. Under these facts, we cannot say the bank owed a fiduciary duty to the Daniels by reason of some special relationship between the borrowers and the bank.

The Daniels also complain that the bank breached its duty of good faith and fair dealing. Kansas courts imply a duty of good faith and fair dealing in every contract. Parties shall not "intentionally and purposely do anything to prevent the other party from carrying out his part of the agreement, or do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Bonanza, Inc. v. McLean*, 242 Kan. 209, 222, 747 P.2d 792 (1987).

In dealing with good faith arguments against lenders by borrowers, we have stated the test of good faith is subjective and requires only honesty in fact. *Karner v. Willis*, 238 Kan. 246, 249, 710 P.2d 21 (1985). In *Karner*, the lender accelerated the borrower's note before an impending garnishment attached, even though the note was not delinquent. The court upheld the lender's action because the note permitted the bank to accelerate the terms of the debt if it deemed itself insecure, and there was substantial competent evidence to support the lender's determination. 238 Kan. at 247, 249. Similarly, in *Riley State Bank v. Spillman*, 242 Kan. 696, 750 P.2d 1024 (1988), the court held the bank did not breach its duty of good faith by enforcing the

terms of a security agreement even though there was a history of nonenforcement, the bank failed to warn the borrower the agreement would be enforced, and the bank breached the peace to secure the collateral.

Army National Bank did not breach its duty of good faith and fair dealing by failing to inspect. Neither the loan agreement nor any special relationship between the parties imposed a duty on the bank to inspect; therefore, there was no such duty to breach. Further, the bank did not intentionally or purposely prevent Gerleman from properly constructing the Daniels' house. The bank was not aware of any problems with the construction of the home until the loan proceeds had been substantially disbursed. And, most important, the Daniels never specifically requested the bank to cease distribution of the funds to their builder. The trial court correctly determined the bank had not breached its duty of good faith and fair dealing.

The Daniels next request that the public policy stated by the Supreme Court of Nevada in *Davis v. Nevada National Bank*, 103 Nev. 220, that lenders cannot disregard a borrower's request to cease making payments to a builder after substantial construction deficiencies are reported to the lender, be adopted by this court. In *Davis*, borrowers brought action against a bank which made a construction loan to recover for the bank's failure to adhere to the borrowers' instructions to cease making payments to their builder after substantial construction deficiencies were discovered. The district court granted the bank's motion for summary judgment, and the borrowers appealed. The Supreme Court of Nevada reversed the district court, reasoning that lender liability may arise under a construction loan when: (1) the lender assumes the responsibility or the right to distribute loan proceeds to parties other than its borrower during the course of construction; (2) the lender is apprised by its borrower of substantial deficiencies in construction that affect the structural integrity of the building; (3) the borrower requests that the lender withhold further distributions of loan proceeds pending the satisfactory resolution of the construction deficiency; (4) the lender continues to distribute loan proceeds in complete disregard of its borrower's complaints and without any bona fide attempt to ascertain the truth of the complaints; and (5) the borrower ultimately is dam-

aged because the substance of the borrower's complaints was accurate and the borrower is unable to recover damages against the contractor or other party directly responsible for the construction deficiencies. 103 Nev. at 224.

The Nevada Supreme Court noted that the bank, which had made the construction loan and was retaining the funds pending disbursement by the bank to the contractor, had a duty to conduct a reasonable investigation and reach bona fide conclusions as to the validity of the borrowers' complaints of significant structural deficiencies in the project. The court held that a lender may not with impunity disregard its borrower's complaint of substantial construction deficiencies affecting the structural integrity of the project when the construction lender has granted a loan but retained the funds pending distribution to the contractor itself. 103 Nev. at 222.

The Nevada court narrowed its ruling by explaining that nothing it had said should be interpreted beyond the comparatively narrow confines of the instant case. It noted that specifically, under usual construction loan terms and conditions, no lender should consider itself at risk if it elects not to generally inspect the progress of the construction of a project financed by the lender. It stated a lender is not to consider itself at risk if it volitionally elects to inspect and does so negligently or ineffectively. 103 Nev. at 223.

We agree with the holding of the Nevada court and that the ruling in *Davis v. Nevada National Bank* must be narrowly construed. Here, although the bank assumed the right to distribute the loan proceeds to a party other than its borrowers during the course of construction, and the lender was apprised by the borrowers of substantial defects in construction such that the structural integrity of the building was threatened, the borrowers did not request that the lender withhold further distribution of the loan proceeds. Without a request from the borrowers to cease distribution of the funds, there is no duty on the lender to withhold the funds.

The final question is whether the bank is entitled to foreclosure of its construction loan mortgage. It is uncontroverted that the Daniels never made a payment on the note. The loan is in default

and Army National Bank is entitled to judgment on its note and foreclosure of its mortgage.

The judgment of the Court of Appeals affirming the district court is affirmed.