**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 14-4765 & 15-3562
_____

BANK OF AMERICA, N.A. successor in interest to MERRILL LYNCH CREDIT
CORPORATION, by and through its servicer and attorney-
in-fact, PHH MORTGAGE CORPORATION

v.

KIRBY WESTHEIMER,
                                          Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3:12-cv-07080)
District Judges: Honorable Joel A. Pisano & Anne E. Thompson

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 19, 2016

Before:  MCKEE,[*] FUENTES,[**] and ROTH, *Circuit Judges*

(Opinion filed: March 20, 2017 )
_____

OPINION[***]
_____

_____

[*] The Honorable Theodore A. McKee was Chief Judge at the time this appeal was
submitted.  Judge McKee completed his term as Chief Judge on September 30, 2016.

[**] The Honorable Julio M. Fuentes assumed senior status on July 18, 2016.

[***] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

FUENTES, *Circuit Judge*.

In this mortgage foreclosure appeal, defendant-appellant Kirby Westheimer argues that the District Court erred in granting a foreclosure judgment in favor of the plaintiffs-appellees (collectively, along with their predecessors, "BoA") over his affirmative defenses and counterclaims, and erred further in denying his Fed. R. Civ. P. 60(b)(2) motion for relief from the judgment. Detecting no error warranting remand, we will affirm.

## I.

### a) Background

This case arises out of a construction loan that Westheimer intended to use to renovate and rebuild parts of his home in Princeton, New Jersey. After hiring an architect, whom he also retained as construction manager, Westheimer began work on the project in the mid-to-late 2000s. During this period, Westheimer paid the various contractors using his own personal funds. It proved to be quite an expensive undertaking; by late summer of 2008, he had already sunk more than a million dollars into the ongoing renovations.

In order to complete the work, Westheimer mortgaged his property in September 2008 and entered into a construction loan agreement (the "Agreement") with BoA for an aggregate principal amount of $1.5 million. The Agreement contemplated a construction period ending in March 2010, about a year and half later; requests for extensions of this

deadline were subject to BoA's approval.

Several sections of the Agreement pertained to BoA's right to conduct inspections of the property during the pendency of the construction. For instance, Section 2.4(a)(4) premised the disbursement of funds on BoA's "conduct[ing] such inspections as it may require" with results proving satisfactory to BoA.[1] Section 2.5(b) further conditioned each scheduled disbursement on the successful completion of a scheduled inspection; Section 2.5(c) required Westheimer to pay for the various inspections. Section 2.5(d), meanwhile, disclaimed any obligation on BoA's part to supervise construction or conduct inspections for Westheimer's benefit, while emphasizing that the inspections were *not* to be viewed as an endorsement of project's pace, progress, or quality:

> [BoA] is under no obligation to supervise construction of the Improvements. [BoA's] inspection of the construction of the Improvements is for the sole purpose of protecting and preserving the security of [BoA]. No inspection is to be construed as a representation or endorsement that the construction of the improvements is in fact in compliance with Plans and Specifications, that the construction will be free of defective material or workmanship, or that the construction is in compliance with limitations or requirements imposed by covenants and restrictions of record or by governmental authority.[2]

Section 7 of the Agreement contained an integration clause and a subsection entitled "Borrower-Lender Relationship," which said that BoA "will not be considered . . . a

---

[1] App. at 46. Unless otherwise specified, appendix citations are to the second appendix compiled in C.A. No. 15-3562.

[2] App. at 47.

3

partner, agent or joint venturer."[3]

b) Foreclosure Action; Pleadings

In 2012, BoA filed a verified foreclosure complaint in the United States District Court for the District of New Jersey. Invoking the New Jersey Fair Foreclosure Act, N.J. Stat. Ann. § 2A:50-53 *et seq.*, and the District Court's diversity jurisdiction, BoA alleged that Westheimer had defaulted on the Agreement and mortgage note by failing to complete the improvements to his home by the agreed-upon date, and had subsequently failed to correct his defaults. BoA sought a final judgement of foreclosure.

Westheimer countered with an answer containing twenty-five affirmative defenses and thirteen state-law counterclaims, all of which "ar[ose] out of the [allegedly] negligent and otherwise improper manner and means by which [BoA] inspected and/or failed to inspect the [construction project] as a precondition of its disbursement of the Loan proceeds."[4] Westheimer alleged that, lacking any experience with construction projects or lending, he was induced by BoA to believe that its agents were assuming the responsibility to oversee and monitor the loan and underlying construction project, which it would do via the inspections tied to the disbursement of funds—despite the language in the Agreement to the contrary. Due in part to BoA's representations, its use of "draw affidavits," and its requirement that he invest additional money in the construction, it was

---

[3] App. at 51–52.

[4] App. at 112.

Westheimer's understanding that the procedures of the Agreement existed to ensure the timely completion of the construction project at or under cost. In reality, Westheimer alleged, BoA conducted what were essentially "sham" inspections and did not adequately monitor the project, somehow failing to notice that the project was grievously behind schedule and plagued with disruption, delay, and deficiencies. For instance, while refusing to provide Westheimer with the relevant inspection reports, BoA told him through its representatives that progress was "fine" and "looking good."[5]

Westheimer charged that, through these inducements and subsequent negligence, BoA had created a special relationship with him giving rise to a duty of care under the law—a duty BoA had subsequently breached. BoA was therefore "complicit in the events giving rise to the alleged default," flowing from its "gross negligence" in failing to conduct appropriate inspections "before authorizing disbursements under the" Agreement.[6] Westheimer sought, among other things, a judicial declaration that he was not in breach and/or default, a rescission of the foreclosure notice, an injunction against the foreclosure, refund of all moneys paid to BoA, and damages.

c) Motions Practice and Decisions

BoA filed a combined motion to dismiss Westheimer's counterclaims and motion for summary judgment on its foreclosure claim. Westheimer opposed. Determining that

[5] App. (14-4765) at 156.

[6] Westheimer Br. (14-4765) at 8–9.

5

Westheimer had failed to plead any counterclaims upon which relief could be granted, and that the undisputed issues of material fact otherwise fell in BoA's favor, the District Court dismissed Westheimer's counterclaims and granted summary judgment in favor of BoA.[7] About three months later, BoA moved for final judgment of foreclosure, which the District Court granted over Westheimer's opposition. Westheimer appealed (case number 14-4765) and obtained a stay of foreclosure pending the outcome of his appeal.

Then, in August 2015, Westheimer filed a Fed. R. Civ. P. 60(b)(2) motion for relief from the District Court's summary judgment/dismissal decision. The 60(b)(2) motion was premised on BoA's inspection reports, which had been belatedly obtained as part of a separate state-court proceeding against Westheimer's contractors. According to Westheimer, the reports revealed that BoA prematurely disbursed the proceeds of the loan, despite knowing that insufficient funds were available to complete the project.

The District Court denied the 60(b)(2) motion as untimely and otherwise without merit.[8] Westheimer again appealed (case number 15-3562). The two appeals have been consolidated for disposition.

---

[7] *See generally Bank of Am., N.A. v. Westheimer*, No. 12-7080, 2014 WL 809207 (D.N.J. Feb. 28, 2014) (Pisano, J.); App. at 145 (accompanying order).

[8] *See generally Bank of Am., N.A. v. Westheimer*, No. 12-7080, 2015 WL 5562306 (D.N.J. Sept. 21, 2015) (Thompson, J.). Judge Thompson inherited the case after Judge Pisano's 2015 retirement.

a) <u>Dismissal and Summary Judgment</u>

As an initial matter, we agree that, on these particular facts and in this particular procedural posture, the decisions to dismiss and to grant summary judgment are intertwined. If, as Westheimer contends, BoA made "express representations and assurances" that its inspections signaled its approval of the project's progress and quality such that it owed him a duty under state law despite the Agreement's language to the contrary, deciding the case at this stage in favor of BoA might have been inappropriate.[10]

Westheimer's appellate argument focuses on the existence of this alleged duty. With regard to his counterclaims specifically, he says that he has pleaded sufficient facts

---

[9] We have jurisdiction under 28 U.S.C. § 1291. Westheimer's notice of appeal was timely as measured from the District Court's final judgment of foreclosure; the Court's earlier summary judgment decision did not fully resolve the case and was therefore not final and appealable. Our review of the dismissal of Westheimer's counterclaims and the granting of summary judgment in favor of BoA is plenary, applying the well-established standards with which the parties are familiar. *Cty. Concrete Corp. v. Twp. of Roxbury*, 442 F.3d 159, 163 (3d Cir. 2006). We construe all facts and draw all reasonable inferences in favor of Westheimer as the non-moving party. *See Fraternal Order of Police v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016) (summary judgment); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 267 n.2 (3d Cir. 2016) (12(b)(6)).

Our review of the order denying Westheimer's Fed. R. Civ. P. 60(b) motion is for abuse of discretion. *Budget Blinds, Inc. v. White*, 536 F.3d 244, 251 (3d Cir. 2008).

In a diversity case, we apply state substantive law—here, New Jersey's—and federal procedural law. *Schmigel v. Uchal*, 800 F.3d 113, 119 (3d Cir. 2015). The decisions of the New Jersey Supreme Court are controlling, and the decisions of New Jersey's other courts are to be afforded some weight. *See Edwards v. HOVENSA, LLC*, 497 F.3d 355, 361 (3d Cir. 2007); *N. Ins. Co. v. Aardvark Assocs.*, 942 F.2d 189, 193 (3d Cir. 1991).

[10] Westheimer Br. (14-4765) at 13.

to show that "the conduct by [BoA] was so unfair and extreme that there were special circumstances giving rise to a claim for breach of fiduciary duty."[11] Westheimer does not otherwise contest the core New Jersey elements of a *prima facie* mortgage foreclosure case, however, such as the underlying existence of the mortgage debt, the validity of the mortgage, or default under the note.[12] Further, he does not argue that the discussions and assurances he describes are something other than parol evidence extrinsic to the Agreement.

As he did before the District Court, Westheimer relies heavily on *United Jersey Bank v. Kensey*[13] to support his claim that BoA's alleged conduct sufficed to give rise to a duty. In *Kensey*, the Appellate Division of the New Jersey Superior Court articulated exceptions to the general rule that "creditor-debtor relationships rarely give rise to a fiduciary duty."[14] Relying on the Restatement (Second) of Torts § 551, the Appellate Division explained that a duty may arise when a lender commits gross acts of misconduct or deceit, or under the "special circumstance" where a lender "knows or has reason to know that the customer is placing his trust and confidence in the bank and [is] relying on

---

[11] Westheimer Br. (14-4765) at 16–17.

[12] *See Fid. Union Trust Co. v. Guterl*, 22 A.2d 233, 234 (N.J. 1941); *Great Falls Bank v. Pardo*, 622 A.2d 1353, 1355–56 (N.J. Super. Ct. Ch. Div. 1993).

[13] 704 A.2d 38 (N.J. Super. Ct. App. Div. 1997).

[14] *Id.* at 44.

the bank . . . to counsel and inform him."[15]

Neither Westheimer's pleadings nor his affidavit in support of summary judgment, however, suffice to place him under the "special circumstances" contemplated in *Kensey*. In light of the clear and unequivocal language of the Agreement—which assigned the responsibility of hiring contractors to Westheimer,[16] specifically disclaimed any quality assurances arising from the inspections, and contained an integration clause— Westheimer has not shown that BoA "actively encouraged [him] to rely upon its advice and concealed its self-interest in promoting the transaction involved."[17] The timeline of the case, even viewed in the light most favorable to Westheimer,[18] does not otherwise suggest that BoA behaved in a predatory fashion; BoA waited years before foreclosing and the terms of the Agreement are neither opaque nor out of the ordinary. As the

---

[15] *Id.* at 45 (quotation marks and citations omitted).

[16] Although his 3d Cir. L.A.R. 28.1(a)(2) statements disclose no related cases, Westheimer *did* file suit in state court against the contractors and others involved in the actual building and design process, as we mentioned above the margin. This is not a secret—discovery in that case produced the inspection reports upon which he now relies—but it does diminish somewhat the implication that he was reliant on BoA to the exclusion of other sources of information.

[17] *Kensey*, 704 A.2d at 46.

[18] For instance, he asserts that he would not have invested his own money without being assured by BoA that the Loan would be "professionally and responsibly handled," Westheimer Br. (14-4765) at 18, but Westheimer's expenditures had passed the $1 million mark before BoA and the loan even entered the picture. Further, to the extent that BoA employees and inspectors suggested that all was going according to plan *after* the Agreement was executed, these statements and representations could not have influenced Westheimer's thinking *at the time* he entered into the contract and mortgaged his property.

*Kensey* decision makes plain, absent an egregious breach of good faith, there is "no duty on the part of lenders to disclose information they may have concerning the financial viability of the transactions the borrowers were about to enter."[19]  And in light of the clear language of the Agreement to the contrary, Westheimer cannot meaningfully show that BoA owed a duty to conduct the inspections for *his* benefit, or that he reasonably relied on them for that purpose.[20]

Westheimer also lodges two procedural objections, contending that he should have been given leave to amend his counterclaims and that it was improper to grant summary judgment prior to discovery.  It is true that an initial order of dismissal should generally be without prejudice, and with leave to amend, in the absence of a finding of futility.[21]

---

[19] *Id.*; *cf. Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 280 (N.J. 2002) ("Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law.").

[20] As suggested in *Kensey*'s lengthy string cite, *see Kensey*, 704 A.2d at 46–47, the law of other jurisdictions indicates the absence of an extra-contractual duty.  *See, e.g.*, *Daniels v. Army Nat'l Bank*, 822 P.2d 39, 42 (Kan. 1991) (finding no duty where inspections were conducted for the bank's protection and the borrowers were responsible for hiring contractors); *Davis v. Nev. Nat'l Bank*, 737 P.2d 503, 506 (Nev. 1987); *Lassiter v. Bank of N.C.*, 551 S.E.2d 920, 921, 923–24 (N.C. Ct. App. 2001) (finding no inspection responsibility and no duty even when bank representative said he would "look after" borrowers and ensure that the contractor had "done it right"); *Henry v. First Fed. Sav. & Loan Ass'n*, 459 A.2d 772, 774 (Pa. Super. Ct. 1983) ("[O]rdinarily the law does not impose a duty upon the mortgagee/lender to inspect the mortgaged property for the benefit of the mortgagor/borrower . . . ."); *Roundtree Villas Ass'n. v. 4701 Kings Corp.*, 321 S.E.2d 46, 50 (S.C. 1984) ("[A]bsent a contract the builder has no common law duty to protect the lender and the lender has no common law duty to protect the builder.").

[21] *See Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 861 (3d Cir. 2014).

Here, however, Westheimer has not given us (or, from what we can tell, the District Court) any inkling of what he might change to survive dismissal. And, in any event, his counterclaims were dismissed not because he had failed to plead enough facts, but because he did not, and does not, advance a viable theory of the case. Summary judgment, meanwhile, was granted solely on the underlying validity of the mortgage foreclosure *in the absence of* a meritorious defense or counterclaim. On this particular record, the timing of the District Court's consideration of BoA's summary judgment motion was not error warranting remand.

B) <u>Rule 60(b)(2) Motion</u>

Westheimer also contends that the District Court erred in denying his Fed. R. Civ. P. 60(b)(2) motion. Under that Rule, a District Court may grant relief from a final judgment or order on the basis of newly discovered evidence. Rule 60(c)(1) requires that the motion be made "within a reasonable time," and establishes an outer boundary of one year from the entry of the judgment or order.

Westheimer lodges a threshold challenge to the District Court's determination that he did not timely file his motion. Assuming without deciding that Westheimer filed within the one-year limitations period, we note that the District Court found in the alternative that his delay was unreasonable and that his motion was otherwise without merit. Westheimer says that he obtained the newly discovered evidence in October 2014, *before* the November 2014 entry of final judgment. On these facts, it was not an abuse of discretion for the District Court to call a nine-month filing delay "unreasonable."

Westheimer offers no argument to suggest otherwise or to explain his delay in moving for 60(b)(2) relief. We therefore will affirm on the basis of unreasonable delay and need not reach the District Court's alternative decision on the merits.

IV.[22]

Finding no reason to disturb the District Court's decisions, we will affirm.

---

[22] We close with a marginal (and, given the nonprecedential nature of this decision, nonbinding) suggestion for BoA. A party may invoke federal diversity jurisdiction in most cases only if there is complete diversity among the parties. Here, BoA's verified complaint contained a plaintiff listing for its loan servicer, PHH Mortgage Corporation, which the complaint identified as a New Jersey corporation. Westheimer is, of course, a New Jersey citizen too. We are satisfied that BoA is the real party in interest and that PHH is merely its agent, and we may therefore disregard PHH for the purposes of determining diversity jurisdiction. *See Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193–94 (2d Cir. 2003). Nevertheless, and in order to save time in the future, plaintiffs should remain mindful that facially nondiverse parties in a putative diversity action are problematic, and may merit a sentence or two of explanatory text.