**KAY–CEE ENTERPRISES, INC., Plaintiff,**

v.

**AMOCO OIL COMPANY, Defendant.**

No. 97–2406–JWL.

United States District Court, D. Kansas.

Feb. 10, 1999.

Mark S. Gunnison, Payne & Jones, Chtd., Overland Park, KS, Anthony F. Lo Cicero, Nancy M. Dodderidge, Amster, Rothstein & Ebenstein, New York City, for Kay–Cee Enterprises, Inc., plaintiff.

E. Wayne Taff, Steven F. Coronado, Sherman, Taff & Bangert, P.C., Kansas City, MO, for Amoco Oil Company, defendant.

Christy M. Caddell, Berman, DeLeve, Kuchan & Chapman, Kansas City, MO, for Louis S. Cupp, movant.

### *MEMORANDUM AND ORDER*

LUNGSTRUM, District Judge.

By this action, plaintiff Kay–Cee Enterprises, Inc. ("Kay–Cee") seeks damages arising from defendant Amoco Oil Company's ("Amoco") alleged breach of contract. The matter is presently before the court on defendant's motion for summary judgment (doc. 75) and plaintiff's motion for partial summary judgment as to liability (doc. 79).[1] For the reasons set forth below, the court denies both motions as to

---

1. Also before the court is defendant's motion to strike the declaration of James H. Butler and to strike plaintiff's motion for partial summary judgment (doc. 84). Defendant urges this court to strike these documents on the basis that both constitute egregious violations of Fed.R.Civ.P. 56 and D.Kan.Rule 56.1. The gist of defendant's argument appears to be that, in its motion for summary judgment, plaintiff has failed to comply with those rules' directive that such a motion begin with a "concise statement of material facts." Instead, defendant argues, plaintiff's fact statement is grossly argumentative, anything but concise, and fails to properly refer to the evidentiary record. Further, defendant contends, Mr. Butler's declaration should be stricken due to its biased statements, most of which are not factual, but based on his personal opinions.

In light of defendant's failure to adequately establish the prejudicial effects resulting from plaintiff's purported noncompliance with these procedural rules, coupled with its coinciding failure to cite any authority to support its contention that the argumentative nature of a statement of facts and/or a party's declaration warrants the drastic measure of striking such documents from the record, the court denies defendant's motion. The court notes, however, that to the extent that plaintiff's statement of undisputed facts occasionally fails to refer to the evidentiary record, the court may not consider those alleged facts if not admitted by the defendant. Plaintiff is in the future advised to more accurately adhere to the prescribed procedures of Fed.R.Civ.P. 56 and D.Kan.Rule 56.1.

liability, but sustains plaintiff's motion as to defendant's affirmative defenses of failure of consideration and impossibility of performance.

## I. Background

Plaintiff Kay–Cee is a corporation organized under the laws of Missouri with its principal place of business in Lenexa, Kansas. Defendant Amoco is a Delaware corporation with its principal place of business in Chicago, Illinois.

The undisputed facts reveal that in June 1994, Kay–Cee and Amoco entered into a written trademark licensing agreement, whereby Kay–Cee was granted the right to market promotional merchandise bearing the Amoco tradename and torch-and-oval logo. The promotional items sold by plaintiff included clothing, hats, writing implements, and mugs, and were marketed largely to Amoco's employees and their customers. In return for the right to sell goods featuring the Amoco trademarks, Kay–Cee agreed to pay royalty fees equivalent to six percent of the gross sales of its Amoco-related products.

At some point following the execution of the licensing agreement, plaintiff became aware that products bearing the Amoco trademarks were being marketed and sold by unauthorized vendors. According to plaintiff, these unlicensed dealers marketed their wares to plaintiff's own customers, in direct competition with plaintiff's business, and thus caused plaintiff to suffer lost profits.

On August 20, 1998, Kay–Cee filed this action alleging that Amoco breached the contract by failing to curtail the marketing of unlicensed goods bearing the Amoco trademarks sold in direct competition with plaintiff's Amoco-related products. Defendant moved for summary judgment as to all claims, arguing that the licensing agreement was non-exclusive in nature, and thus imposed no duty, express or implied, upon defendant to "police" others' use of its trademarks. Plaintiff moved for summary judgment as to defendant's liability for the breach, and as to defendant's affirmative defenses of failure of consideration and impossibility of performance.

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment).

The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Discussion

### A. Contractual Ambiguity

██ Under Kansas Law,[2] the construction of a written contract is a matter of law for the court. *Wagnon v. Slawson Exploration Co.,* 255 Kan. 500, 511, 874 P.2d 659 (1994). "The cardinal rule of contract interpretation is that the court must ascertain the parties' intention and give effect to that intention when legal principles so allow." *Ryco Packaging Corp. v. Chapelle Int'l, Ltd.,* 23 Kan. App.2d 30, 926 P.2d 669, 674 (1996) (citing *Hollenbeck v. Household Bank,* 250 Kan. 747, 751, 829 P.2d 903, 906 (1992)). Where a contract is complete and unambiguous on its face, the court must determine the parties' intent from the four corners of the document, without regard to extrinsic or parol evidence. *Simon v. National Farmers Org., Inc.,* 250 Kan. 676, 679–80, 829 P.2d 884 (1992).

██ As a facet of contractual construction, whether an instrument is ambiguous is a question of law for the court. *Id.* A contract is ambiguous if it contains "provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language." *Id.* Contractual ambiguity appears only when "the application of pertinent rules of interpretation to the face of the instrument leaves it generally uncertain which one of two or more possible meanings is the proper meaning." *Marquis v. State Farm Fire and Cas. Co.,* 265 Kan. 317, 324, 961 P.2d 1213, 1219 (1998). The court must not consider the disputed provision in isolation, but must instead construe the term in light of the contract as a whole, such that if construction of the contract in its entirety removes any perceived ambiguity, no ambiguity exists. *Arnold v. S.J.L. of Kansas Corp.,* 249 Kan. 746, 749, 822 P.2d 64 (1991).

As with many contract disputes, the source of contention involves the parties' differing interpretations of the nature and extent of rights granted, and concomitant duties owed, under the contract. The dispute arises from the parties' differing constructions of the contract's grant of the "non-exclusive right to use the Amoco Trademarks," and the contract's subsequent use of the term "exclusive authorization."[3]

According to defendant, the controversy stems from, and is solved by its interpreta-

---

2. The parties agree that general principles of contract law govern the interpretation of the contract at issue in this case. The parties further agree that these general contract principles are the same under both Illinois and Kansas law. In light of the undisputed nature of the choice of law issue, the court will, for simplicity's sake, refer to Kansas caselaw to set forth the general principles of contract interpretation.

3. Paragraph 1(a) of the parties' agreement reads, in pertinent part:

Licensee will have a non-exclusive right to use the Amoco Trademarks (trademarks owned and used by Amoco Oil Company) and related logos for certain merchandise including clothing, wearables and advertising specialties....

Paragraph 10 of the parties' agreement provides:

The exclusive authorization hereby given is revocable by Amoco at any time in the event of Licensee's failure to abide by the terms of this agreement, and Licensee agrees to discontinue all manufacture of

tion of, the presence of the "non-exclusive right" provision. Defendant contends that the term "non-exclusive" is synonymous with "limited," such that the scope of plaintiff's right to use the Amoco trademarks was quite narrow. Specifically, defendant argues that the nonexclusive nature of the licensing agreement allowed defendant unfettered discretion to extend the right to use the Amoco trademarks to additional parties. Further, defendant claims that the parties' contract neither expressly nor impliedly required defendant to prevent third parties from using the Amoco trademarks. With respect to the "exclusive authorization" term appearing in paragraph 10 of the parties' agreement, defendant refers the court to paragraph 12's subsequent use of the term "authorization," arguing that both paragraphs' inclusion of the word "authorization" indicates that the two paragraphs are interrelated. Defendant further argues that, when read together, paragraphs 10 and 12 provide that the permission to use the trademarks was revocable under certain circumstances and that plaintiff had no right to transfer, assign, or otherwise sublicense defendant's authorization to third parties. Defendant maintains that the use of the word "authorization," as opposed to the term "right," was purposeful, such that while the *authorization* to use the Amoco trademarks was exclusive to plaintiff, the *right* to use the Amoco trademarks was non-exclusive in nature.

In contrast, plaintiff argues that although the contract contains the term "non-exclusive" to describe plaintiff's right to use defendant's trademarks, that term means only that plaintiff was not the sole entity granted permission to use the Amoco trademarks, but was instead a member of a select group of vendors, each of which entered similar licensing agreements with defendant. Accordingly, the licensing

agreement was "non-exclusive" only in the sense that vendors other than plaintiff, as opposed to any vendor who so wished, were also specifically authorized by defendant to use the Amoco trademarks. The "non-exclusive" language, plaintiff claims, does not describe the nature of the right conferred upon plaintiff, but is pertinent only to describe the relationship between plaintiff and the remaining authorized dealers amongst whom the exclusive authorization was shared. Plaintiff further contends that its position is bolstered by the contract's later inclusion of the "exclusive authorization" language, such that the right conferred by the contract to use defendant's trademarks was indeed exclusive, albeit to a group of authorized vendors (rather than to plaintiff alone).

■ In light of the principles governing contract construction, the court concludes that the intention of the parties is not discernable from the four corners of the parties' agreement, and thus that the contract between Kay–Cee and Amoco is ambiguous. First, the language of the contract contains no clear designation of the intended scope of the rights conferred by the licensing agreement, and construction of the contract as a whole fails to remove the ambiguity from the disputed terms. Further, the court finds both parties' interpretations of the terms "non-exclusive right" and "exclusive authorization" reasonable. Accordingly, the trier-of-fact must consider evidence of the pertinent facts and circumstances to determine the meaning of the contract in order to effectuate the parties' intent.

## B. Implied Duty to Police the Sale of Unlicensed Goods

### 1. Implied-in-fact Duty to Police

Plaintiff alleges that implicit in the parties' agreement was defendant's duty to

merchandise bearing the Amoco Trademarks immediately upon receipt of a notice of termination premised upon a failure to abide by such terms.

Paragraph 12 of the parties' agreement provides:

This authorization to use the Amoco Trademarks is personal to Licensee, and cannot be assigned or sublicensed without the prior written consent of Amoco.

prevent unauthorized vendors from engaging in the manufacture and sale of products bearing the Amoco trademarks. Plaintiff argues that defendant's duty to police the sale of unlicensed goods necessarily flows from the contract because the licensing agreement would be of no value to plaintiff absent such an implied obligation. Plaintiff further alleges that the "toothless" cease and desist letters sent by defendant to unauthorized vendors were insufficient to adequately fulfill defendant's duty to curtail the unauthorized dealers' sale of unlicensed goods. Instead, plaintiff argues, incumbent upon defendant was the duty to make a more aggressive effort to deter unauthorized vendors, such as threatening or effecting non-payment for the unlicensed goods, or, alternatively, threatening or instigating litigation against the offending vendors.

Defendant, on the other hand, contends that it was under no duty, express or implied, to prevent other vendors from marketing merchandise bearing the Amoco trademarks. Defendant adamantly claims that the contract unambiguously grants a mere non-exclusive right to use its trademarks, and that the contract does not, by its terms, obligate defendant to control the use of the Amoco trademarks by unauthorized vendors. Defendant claims that if the court determines that the contract is ambiguous, the precise meaning of the contract, the nature and extent of the parties' obligations due thereunder, and whether either party is in breach of the contract are questions falling squarely within the province of finder of fact.

The facts surrounding the parties' intentions with respect to the contract, and the inferences to be drawn therefrom, are far from uncontroverted. First, the parties are in dispute as to the number of vendors to which the licensing agreement was drafted to apply. Whereas plaintiff maintains that the licensing agreement was exclusive to a select group of vendors chosen by defendant, defendant contends that by virtue of the "non-exclusive right" conferred by the contract, defendant was free to issue as many trademark licenses as it wished. A further fact upon which the parties disagree concerns plaintiff's claim that it became interested in entering the licensing agreement only because it understood that only it and two other vendors would be the exclusively authorized dealers of Amoco wearables. Defendant disputes this fact insofar as it assumes that the agreement was exclusive such that defendant was not allowed to extend its license to any other vendors. Moreover, defendant maintains, plaintiff was not induced to enter the agreement by any promise that the license would yield substantial profits, but that plaintiff instead understood that its success in the Amoco wearables business was dependent upon plaintiff's own performance. Finally, as support for its contention that the licensing agreement conferred upon licensees the exclusive right to use the Amoco trademarks, plaintiff refers the court to various Amoco announcements, as well as an article printed in defendant's in-house newsletter, each of which indicate that the primary purpose for Amoco's trademark licensing program was to protect the company's trademarks by limiting the number of vendors allowed to use them. While defendant admits that the licensing program was indeed launched, at least in part, to control the quality of goods bearing the Amoco trademarks, defendant argues that the contract clearly bestowed a non-exclusive right from which a duty to police the unauthorized use of the trademarks simply cannot be inferred.

■ The court concludes that neither party has clearly demonstrated an absence of a material fact issue with respect to the existence, or lack thereof, of defendant's duty to restrict the sale of unlicensed goods bearing the Amoco trademarks. Moreover, even if the court were to find that the undisputed facts established such a duty, plaintiff has provided insufficient evidence from which the court could determine, as a matter of law, the parameters of

that duty. Likewise, defendant has failed to meet its burden to show an absence of material fact issues with respect to its contention that no duty to curtail the flow of unauthorized goods was owed. Accordingly, both plaintiff and defendant have failed to satisfy their respective burdens to demonstrate that no material issues of fact remain for trial.

### 2. Implied Duty of Good Faith and Fair Dealing[4]

■ Under Kansas law, a duty of good faith and fair dealing is implied in every contract except employment-at-will contracts. *Daniels v. Army Nat'l Bank*, 249 Kan. 654, 658, 822 P.2d 39, 43 (1991) (good faith duty implied in every contract); *Morriss v. Coleman Co.*, 241 Kan. 501, 518, 738 P.2d 841, 851 (1987) (covenant is not implied in employment-at-will contracts). "The purpose of the good faith doctrine is to protect the reasonable expectations of the parties." *Flight Concepts Ltd. Partnership v. Boeing Co.*, 38 F.3d 1152, 1157 (10th Cir.1994) (applying Kansas law). This implied duty requires the parties to an agreement to refrain from "intentionally and purposely do[ing] anything to prevent the other party from carrying out his part of the agreement, or do[ing] anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Daniels*, 249 Kan. at 658, 822 P.2d at 43 (quoting *Bonanza, Inc. v. McLean*, 242 Kan. 209, 222, 747 P.2d 792 (1987)).

4. The court notes that determining the existence and scope of any implied rights and duties concerning policing most likely implicates trademark law principles, which neither party addressed in the briefs. For example, in a case which appears to be a bit of a departure, *see* 2 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 18.44 at n. 4 (4th ed.1997), the Seventh Circuit has recently held that "[t]he [trademark] owner can if he wants, unless contractually committed otherwise, abandon the trademark, dilute it, attach it to goods of inferior quality, attach it to completely different goods—can, in short, take whatever steps he wants to jeopardize or even completely

■ To the extent that plaintiff argues that, in the context of this case, the duty of good faith and fair dealing necessarily imposed upon defendant a legal obligation to police the unauthorized use of its licensed trademarks, the court concludes that a material fact issue remains there as well. As duly noted by plaintiff, where the good faith performance of an obligation or duty is required in order to effect the reasonable expectations of the parties, courts will impose such an implied duty. *See Flight Concepts*, 38 F.3d at 1157. In light of its conclusion that an issue of material fact remains as to the parties' intent, the court is equally unable to determine the expectations of the parties, much less assess the reasonableness thereof. Accordingly, the court cannot, as a matter of law, rule that, pursuant to the implied duty of good faith and fair dealing, defendant was required to monitor the use of its trademarks by those not subject to a trademark licensing agreement.

### C. Affirmative Defenses

■ With respect to defendant's affirmative defense of failure of consideration, the court notes that defendant's failure to preserve that issue in the pretrial order is considered a waiver of the defense. "The pretrial order supersedes the pleadings and controls the subsequent course of litigation." *Hullman v. Board of Trustees of Pratt Comm. College*, 950 F.2d 665, 667 (10th Cir.1991); Fed.

destroy the trademark." *Westowne Shoes, Inc. v. Brown Group, Inc.*, 104 F.3d 994, 997 (7th Cir.1997). In contrast, it has also been held that a trademark and copyright licensor is "under an implied good faith obligation not to do anything that would impair or destroy the value of an exclusive licensee's rights." *Original Appalachian Artworks v. S. Diamond Assocs., Inc.*, 911 F.2d 1548, 1550 (11th Cir. 1990).

The parties are directed to address the impact of trademark law in their trial briefs. It surely affects the court's perspective with respect to the reasonable expectations of the parties and provides context and guidance for the resolution of this dispute.

R.Civ.P. 16(e). Defendant has not timely sought to amend the pretrial order to include the failure of consideration defense, but has instead apparently abandoned the defense altogether. Accordingly, plaintiff's motion for summary judgment is granted as to this defense.

Although preserved in the pretrial order, defendant's impossibility of performance defense suffers a similar fate. In its motion for partial summary judgment, plaintiff extensively briefed the issue, arguing that the impossibility defense is inappropriate under the facts of this case. In its response, however, defendant wholly fails to address the issue, and for that reason, the inapplicability of the impossibility defense is deemed admitted by defendant. The court notes that even if defendant did not intend to waive its impossibility defense, that theory appears to be entirely without merit on the evidentiary record presented.[5] Thus, plaintiff's motion for summary judgment is granted as to this defense as well.

IT IS THEREFORE BY THE COURT ORDERED THAT defendant's motion for summary judgment (doc. 75) is denied.

IT IS FURTHER ORDERED THAT defendant's motion to strike the declaration of James H. Butler and to strike plaintiff's motion for partial summary judgment (doc. 84) is denied.

IT IS FURTHER ORDERED THAT plaintiff's motion for partial summary judgment (doc. 79) is granted in part and denied in part. Plaintiff's motion for partial summary judgment as to liability is denied. Plaintiff's motion for partial summary judgment as to defendant's affirmative defenses of failure of consideration and impossibility of performance is granted.

---

5. In Kansas, the doctrine of "impossibility, or as stated by the more modern authorities, impracticability of performance may relieve a promisor from liability for breach of contract." *Sunflower Elec. Cooperative, Inc. v. Tomlinson Oil Co., Inc.*, 7 Kan.App.2d 131, 138, 638 P.2d 963, 969 (1981). The general rule concerning discharge by supervening impracticability is stated in the Restatement (Second) of Contracts § 261 (1981):

Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.

*Id.; Central Kansas Credit Union v. Mutual Guaranty Corp.*, 102 F.3d 1097, 1102 (10th Cir.1996) (applying Kansas law). The court's reading of the record reveals no apparent evidence to substantiate the elements of such a defense. Consequently, defendant's abandonment of the impossibility defense is quite appropriate.